MENDEZ, A.J.S.C.
*150 This matter comes before the court upon plaintiff's motion for final approval of *316 a class action settlement under Rule 4:32-2. The underlying action arises out of a merger in which defendant, OceanFirst Financial Corporation ("OceanFirst") acquired defendant, Ocean Shore Holding Company ("Ocean Shore") in a deal worth approximately $145 million. Plaintiff, an Ocean Shore stockholder, brought suit against defendants alleging that Ocean Shore's board of directors ("Board") breached their fiduciary duty in approving the merger. Plaintiff and defendants reached a settlement, which was non-monetary. It required defendants to release "Supplemental Disclosures" so that stockholders could be better informed when voting on the merger. Defendants also agreed to pay plaintiff's attorneys' fees in the amount of $210,000 and $10,000 in costs.
Plaintiff's present motion for final approval of the settlement as well as fees and costs is unopposed by defendants. Plaintiff seeks to have this court: (1) approve the proposed settlement as fair, reasonable and adequate; (2) certify the proposed Class and certify plaintiff Strougo as representative for the Class; (3) appoint Pomerantz LLP as Class Counsel; (4) grant plaintiff's application for an award of attorneys' fees of $210,000, reimbursement of expenses and costs of $10,000, and grant plaintiff Strougo an incentive award of $1,000, to come out of the proposed attorneys' fees award.
This case presents novel issues related to the determination of class action settlement approval pursuant to Rule 4:32-2. For the reasons stated in this opinion, the court grants plaintiff's motion. The court is satisfied that this matter is appropriate for a class action and plaintiff may represent the interests of the proposed Class. The court grants Class certification. Regarding the proposed settlement, the court formally adopts the application of the Girsh factors and determines the settlement is fair, reasonable and adequate. Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975). The court *151 also holds that the non-monetary settlement in this case provides a material benefit to the Class.
FACTUAL BACKGROUND
On July 13, 2016, Ocean Shore and OceanFirst, two publicly traded financial service companies, announced in a joint press release they had entered into a merger agreement. Under this agreement, each Ocean Shore share would be exchanged for $4.35 in cash and .9667 shares of OceanFirst stock. Plaintiff, Robert Strougo, owned 900 shares of Ocean Shore stock at the time the merger was announced. On July 26, 2016, plaintiff, on behalf of himself and other Ocean Shore stockholders, filed a class action complaint against Ocean Shore, Ocean Shore's Board,[1] and OceanFirst. The complaint alleged that the Board breached their fiduciary duty by approving the transaction and that OceanFirst aided and abetted the Board's breach.
The proposed Class consists of all individuals who owned or beneficially held shares of Ocean Shore common stock in the period from July 13, 2016, through the date the merger closed, November 30, 2016.[2] There are approximately 6.4 million outstanding shares of Ocean Shore common stock. Plaintiff's counsel investigated the allegations, including a review of press releases, analyst reports and related filings *317 with the Securities and Exchange Commission ("SEC"). Plaintiff's counsel also consulted with Mary O'Connor, a valuation expert, who provided information regarding valuation and pricing, the process leading to the merger, and the adequacy of corporate disclosures made to Ocean Shore stockholders. *152 Settlement and Supplemental Disclosures
On August 12, 2016, plaintiff served his first request for production of documents. On August 25, 2016, in connection with the merger's approval process, Ocean Shore and OceanFirst filed an S-4 Registration Statement (the "Original Registration Statement") with the SEC, which was disseminated to Ocean Shore stockholders. After reviewing this statement, plaintiff amended the complaint to also allege the Original Registration Statement was misleading and omitted material information. Shortly thereafter, the parties commenced settlement discussions and agreed to a stay of the action while discussions were ongoing. On September 20, 2016, in lieu of plaintiff filing a motion, Ocean Shore agreed to provide confidential non-public discovery on an expedited basis. On September 26, 2016, plaintiff issued a settlement demand letter seeking, among other things, to have defendants release previously undisclosed information omitted from the Original Registration Statement. Ocean Shore responded with proposed additional disclosures and the parties subsequently agreed on the content of "Supplemental Disclosures" to be released to the stockholders.
Plaintiff highlights three categories of information contained in the Supplemental Disclosures that they claim materially benefitted stockholders. The first includes details regarding the analyses conducted by Ocean Shore's financial advisor, Sandler O'Neill + Partners ("Sandler O'Neill"). Shortly before defendants announced the merger, Sandler O'Neill provided a "fairness opinion" to Ocean Shore's Board for the purpose of evaluating the proposed merger. The Board reportedly relied on this fairness opinion in recommending that stockholders approve the merger. Some "metrics" Sandler O'Neill used in conducting the fairness opinion analyses were not available in the Original Registration Statement. The Supplemental Disclosures included additional information on the valuation of the two companies, such as the total assets, the percentage of loans to deposits, leverage ratio, return on average assets, and other significant financial details for both Ocean Shore and OceanFirst. Also, the Original Registration Statement did not *153 include some data on individual multiples for each independent merger transaction. This information was later made available by the Supplemental Disclosures.
The second category of information involves net income projections with respect to Ocean Shore done by the buyer, OceanFirst. These disclosures provided Ocean Shore stockholders with insight into Ocean Shore's future financial performance for the years 2016-2021 from the buyer's perspective.
The third category of information involves process and potential conflicts of interest. In the Supplemental Disclosures, defendants made additional disclosures concerning discussions between Ocean Shore's CEO, Steven Brady, and OceanFirst's CEO about continued employment and consulting arrangements for Brady and other Ocean Shore executive officers at OceanFirst. The Supplemental Disclosures also revealed more information about Sandler O'Neill, including fees Sandler O'Neill received from Ocean Shore in connection with the transaction, information about its role as a broker-dealer, information *318 about its business relationship with OceanFirst, and fees paid to it by OceanFirst.
As part of the settlement, on October 6, 2016, Ocean Shore and OceanFirst filed an amendment to the Original Registration Statement that included these Supplemental Disclosures. A few days later, the parties signed a Memorandum of Understanding reflecting a principal agreement to settle. Defendants filed a finalized amendment to the S-4 Registration Statement incorporating the Supplemental Disclosures on October 17, 2016. On November 22, 2016, the merger was approved by majority vote of the Ocean Shore stockholders. The transaction closed November 30, 2016.
Following the merger's consummation, plaintiff conducted confirmatory discovery. Defendants produced additional internal confidential documents. Plaintiff deposed Brady, Ocean Shore's former CEO and lead negotiator on the merger. Plaintiff also deposed Catherine Lawton, a representative of the Board's financial advisor, Sandler O'Neill. The parties subsequently finalized a proposed settlement providing for $210,000 in attorneys'
*154 fees with $1,000 of that amount going to plaintiff as an incentive award for bringing the action. Seven attorneys and paralegals from Pomerantz LLP spent a total of 410.5 hours on the case. Two partners and an associate from Brodsky & Smith, local counsel for plaintiff, spent a total of thirty-four hours on the case. The agreement also provided for $10,000 in expenses. The bulk of expenses were expert fees.
Plaintiff motioned for preliminary approval of the settlement on June 27, 2017. The court granted preliminary approval, scheduled a fairness hearing, and set forth the timing and method for providing notice to the Class. The firm of Donlin, Recano & Company Inc. ("DRC") was retained to provide notice. As of August 17, 2017, DRC had mailed a total of 3532 copies of notice to beneficial stock owners and "nominees"[3] who held Ocean Shore common stock at any time during the class period. The Notice has been given to the Class in the manner directed by the preliminary approval order. Proof of the mailing of the Notice has been filed with the court, and a full opportunity to be heard has been offered to all parties to the action, the Class, and persons in interest. The notice included a summary of the terms of the settlement. It also informed stockholders that they had the right to object to the settlement and provided the date, time and location of the then pending fairness hearing.
In a letter to the court dated August 7, 2017, Jay Hershberg, a purported stockholder,[4] objected to the settlement, claiming other Class members should be entitled to additional compensation. The letter referenced the pending date of the fairness hearing. Hershberg *155 reiterated these objections in a second letter dated September 1, 2017. There were no other objectors. The matter was argued to the court on September 14, 2017. Neither Hershberg nor any other stockholder attended the *319 hearing. Defendants support plaintiff's motion for approval of the settlement.
DISCUSSION
I. The Court Certifies the Class Pursuant to Rule 4:32
Class actions in this state are governed by Rule 4:32-1(a), which states:
One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
In other words, for a proposed class to be certified it must meet the four requirements of numerosity, commonality, typicality and adequacy of representation.
A. Numerosity
"There is no precise number that distinguishes between a class that satisfies the condition of numerosity and one that does not." Fink v. Ricoh Corp., 365 N.J. Super. 520, 557, 839 A.2d 942 (Law Div. 2003). It has been held that a Class of eighty-one property owners was sufficient to meet the numerosity requirement. See Saldana v. City of Camden, 252 N.J. Super. 188, 193, 599 A.2d 582 (App. Div. 1991). There are over 6.4 million outstanding shares of common stock in Ocean Shore. At least 3532 copies of notice were distributed. While the precise number of members in this case is presently unknown, it is clear that joinder of all members would be impracticable and therefore the numerosity requirement is met.
*156 B. Commonality
Rule 4:32-1(a)(2) requires that there be questions of law or fact common to the Class. A single common question may be sufficient. See Delgozzo v. Kenny, 266 N.J. Super. 169, 185, 628 A.2d 1080 (App. Div. 1993). Issues common to the Class in the present case include, whether defendants violated the fiduciary duties owed to Class members and whether the consideration that was paid for the Ocean Shore shares pursuant to the merger was fair and reasonable. These issues are sufficient to satisfy the commonality requirement.
C. Typicality
The claims of a putative class representative are typical if they "have the essential characteristics common to the claims of the class." In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 425, 461 A.2d 736 (1983) (quoting 3B James W. Moore et al., Moore's Federal Practice ¶ 23.06-2 (2d ed. 1982) ). The typicality requirement ensures that the interests of the class and the class representative are aligned so that the class representative, by furthering his own goals, is also furthering the goals of the class. See Goasdone v. Am. Cyanamid Corp., 354 N.J. Super. 519, 530, 808 A.2d 159 (Law Div. 2002). Here all claims arise from the same events and are based on the same legal theories. As stockholders, the alleged breach of fiduciary duty impacted plaintiff and other Class members in essentially the same way. Typicality is satisfied.
D. Adequate Representation
Determining adequacy of representation requires that two factors be established: "(a) plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic *320 to those of the class." Delgozzo, 266 N.J. Super. at 188, 628 A.2d 1080. Here, there is no apparent conflict between plaintiff and the Class members. Also, plaintiff's counsel, Pomerantz LLP, has significant experience litigating class action cases of this type. The *157 fourth and final requirement under Rule 4:32-1(a) is also satisfied. Having completed the analysis of all four factors, the court certifies the Class pursuant to Rule 4:32.
II. The Court Approves the Proposed Settlement and Holds that it is Fair, Reasonable, and Adequate
Settlement has long been preferred to litigation, and public policy suggests upholding good faith settlements, even without strong regard to the underlying consideration. See Pascarella v. Bruck, 190 N.J. Super. 118, 125, 462 A.2d 186 (1983). "Settlement spares the parties the risk of an adverse outcome and the time and expense-both monetary and emotional-of protracted litigation. Settlement also preserves precious and overstretched judicial resources." Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 215 N.J. 242, 253-54, 71 A.3d 888 (2013) (citations omitted). "There is a clear public policy in this state favoring settlement of litigation." Herrera v. Twp. of S. Orange Vill., 270 N.J. Super. 417, 424, 637 A.2d 526 (App. Div. 1993). That said, a class action settlement, which binds individuals not before the court, creates unique due process concerns. Accordingly, parties cannot settle a class action without court approval.
"The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." R. 4:32-2(e)(1)(C). "The basic test for court approval of a settlement of a class action is whether it is fair and reasonable to the members of the class." Chattin v. Cape May Greene, 216 N.J. Super. 618, 627, 524 A.2d 841 (App. Div. 1987). If the settlement is fair and reasonable, it may be approved even though individual members of the class refuse to consent. Ibid.
The hearing on the proposed settlement is not a plenary trial and the court's approval of the settlement is not an adjudication of the merits of the case. Rather, it is the court's responsibility to determine, based upon the relative strengths and weaknesses *158 of the parties' positions, whether the settlement is "fair and reasonable," that is, whether it adequately protects the interests of the persons on whose behalf the action was brought. Builders League of S. Jersey, Inc. v. Gloucester Cty. Utils. Auth., 386 N.J. Super. 462, 471, 902 A.2d 253 (App. Div. 2006) (citing Morris Cty. Fair Hous. Council v. Boonton Twp., 197 N.J. Super. 359, 370, 484 A.2d 1302 (Law Div. 1984) ).
Hershberg, in his letter objecting to the proposed settlement, included an article from the Wall Street Journal that references the recent Seventh Circuit case of In re Subway Footlong Sandwich Marketing & Sales Practices Litigation, 869 F.3d 551 (7th Cir. 2017). In that case, the court threw out a class action settlement involving the Subway food chain's "Footlong" sandwich on grounds that the only beneficiaries were the lawyers. The parties agreed in principle to a settlement in which Subway committed to institute a number of practices designed to ensure that its sandwich rolls measure at least twelve inches long. The court stated, "[i]f the class representatives have agreed to a settlement that provides meaningless relief to the putative class, the district court should refuse to certify or, alternatively, decertify the class. 'No class action settlement that yields zero benefits for the class *321 should be approved, and a class action that seeks only worthless benefits for the class should be dismissed out of hand.' " Id. at 556 (quoting In re Walgreen Co. Stockholder Litig., 832 F.3d 718 (7th Cir. 2016) ).
Next, this court will conduct a two-step process to determine whether the proposed settlement satisfies the requirements of Rule 4:32-2(e). First, the court will apply the Girsh factors to analyze the proposed settlement in this case. Second, the court will determine whether the proposed settlement provides a material benefit to the Class.
A. Girsh Factors
The New Jersey rule parallels Rule 23 of the Federal Rules of Civil Procedure. An often cited Third Circuit case provides a list of *159 factors that help distinguish between a settlement that is "fair and adequate" versus one that provides only "worthless benefits" to the class. In Girsh, 521 F.2d at 153, the court determined the record before the district court was not sufficiently developed, and could not, therefore, support the approval of the settlement at issue. On remand, the Third Circuit court directed the district court to reevaluate the fairness of the settlement. The court enumerated nine factors for evaluating fairness. Those factors are:
(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.
[ Id. at 157.]
No published opinion in New Jersey has explicitly adopted these factors thus far.[5] Because the Girsh factors are reinforced by a substantial amount of case law in the Third Circuit and elsewhere, this court is persuaded to formally adopt these factors in New Jersey when conducting an analysis to determine the approval of a class action settlement pursuant to Rule 4:32-2(e). The court will now apply the Girsh factors to this case.
1. The Complexity, Expense and Likely Duration of Litigation
The first Girsh factor "captures the probable cost, in both time and money, of continued litigation." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535-36 (3d. Cir. 2004). This case involves breaches of fiduciary duty and complex commercial valuations. The expense of a trial and the use of both judicial and party resources would likely be substantial. See *160 Weiss v. Mercedes-Benz of N. Am., Inc., 899 F.Supp. 1297, 1300-01 (D.N.J. 1995) (noting that the expense involved in taking a class action or other complex commercial litigation to trial "can be staggering"). The court agrees that the potential cost to litigate this case to final disposition will be staggering. This factor weighs heavily in favor of settlement. *322 2. The Reaction of the Class to the Settlement
This factor "attempts to gauge whether members of the class support the settlement." In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 318 (3d Cir. 1998). "The reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." Fanning v. AcroMed Corp. (In re Orthopedic Bone Screw Prods. Liab. Litig.), 176 F.R.D. 158, 184 (E.D. Pa. 1997). In the present case, notice was provided to the owners of more than 6.4 million shares of stock in Ocean Shore. The court received an objection from only one individual, Hershberg, by way of two informal letters. The letters indicated that Hershberg was aware of the date of the fairness hearing, but Hershberg did not attend. Had he done so, he would have been granted an opportunity to clarify and formalize his objections. The overwhelming silence of the Class is deafening, and it is an indicator that the Class has reacted favorably to the merger and the settlement. This factor weighs in favor of approving the settlement.
3. The Stage of the Proceedings and the Amount of Discovery Completed
This factor considers whether the settlement has been proposed at too early a stage in the proceedings for plaintiff to be able to adequately assess its fairness. Prudential, 148 F.3d at 319 (noting that the parties must have an adequate appreciation of the merits of the case before negotiating a settlement).
In this case, the merger at the heart of this action was announced in July 2016, only a few months before the parties had *161 principally agreed to settle in early October 2016. The rapid movement of the case to settlement is enough for the court to raise an eyebrow as to the adequacy of discovery. However, upon full review of the record, the court is satisfied that plaintiff engaged in enough discovery to adequately assess the value of their case. Plaintiff reviewed all of Ocean Shore's and OceanFirst's relevant public filings and analyzed confidential, internal documents produced by Ocean Shore. Plaintiff also consulted with a financial expert multiple times, including after the filing of the Original Registration Statement, the Supplemental Disclosures, and during and after confirmatory discovery. After the parties tentatively agreed to settle, plaintiff engaged in confirmatory discovery and deposed two key witnesses, the former CEO and chief negotiator of Ocean Shore, as well as the Company's financial advisor's lead contact on the merger. While the settlement was reached early in the proceedings, the court is satisfied that the extent of discovery performed is adequate. The court concludes that the early resolution of the case does not weigh heavily against the approval of the settlement.
4. The Risks of Establishing Liability
The next two Girsh factors, the risk of establishing liability and damages, require the court to "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." Prudential, 148 F.3d at 319. In considering the risk of establishing liability a court must "examine what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 814 (3d Cir. 1995).
Continuing the litigation would have likely involved overcoming dispositive motions and dueling expert testimony.
*323 Both could potentially put plaintiff's case at risk. Here plaintiff and his counsel determined that, after reviewing discovery and evaluating *162 the likely legal arguments available to defendants, the immediate benefit conferred upon the Class through settlement was superior to the risks of continued litigation and the uncertainty of the result. The court concludes that this factor weighs in favor of approving the settlement.
5. The Risks of Establishing Damages
Like the previous factor, this inquiry attempts to measure the "expected value of litigating the action rather than settling it at the current time." Id. at 816. If plaintiff managed to succeed in proving liability on the part of defendants, it would still be necessary to establish the extent of damages. Again, this would probably involve dueling expert testimony as well as substantial proofs. There is a risk that the court would find low or no damages in the event of trial. For this reason, this factor weighs in favor of approving the settlement.
6. The Risks of Maintaining the Class Action Through Trial
Under this factor, a high risk of decertification supports approval of a settlement. The court has not been made aware of any reason why it would potentially decertify or modify the Class in this case. Even so, the United States Supreme Court held in Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), that courts need not inquire into manageability where request for certification is for settlement purposes only. In light of this holding, courts have held that this factor is of "negligible importance" in deciding whether to approve a class action settlement. See Weber v. Gov't Emps. Ins. Co., 262 F.R.D. 431, 446 (D.N.J. 2009) ; Prudential, 148 F.3d at 321. Accordingly, the court assigns this factor minimal weight.
7. The Ability of the Defendants to Withstand a Greater Judgment
This factor examines whether defendants could withstand a judgment for an amount significantly greater than the *163 settlement, if so the factor weighs against approval. See In re Cendant Corp. Litig., 264 F.3d 201, 240-41 (3d Cir. 2001). Here the settlement is non-monetary. There's no information the court is aware of that indicates any defendant would be unable to withstand a monetary judgment. However, this by itself is not enough to reject the settlement because the other factors cut clearly in favor of settlement.
8. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery
Without the ability to place a value on the best possible recovery, a court may consider whether a settlement yields immediate and tangible benefits and if it is reasonable in light of the best possible recovery and the attendant risks of litigation. See Halley v. Honeywell Int'l, Inc., 861 F.3d 481, 490 (3d Cir. 2017). The complaint in this action sought, among other things, to enjoin defendants from proceeding with the acquisition and to enjoin defendants from implementing certain procedural "deal protection devices" in the merger agreement. It sought to have Ocean Shore board members maximize stockholder value in any proposed sale of the company and it sought compensation for any losses or damages suffered as a result of the wrongful conduct alleged in the complaint. If plaintiff receiving all relief sought in the complaint is considered the best possible recovery, the court must *324 consider the actual recovery obtained under that light.
Here, the members of the Class did not receive any enhanced monetary benefit from the settlement. The Supplemental Disclosures agreed to as part of the settlement addressed the financial fairness of the merger consideration and the procedural fairness of the merger transaction. These were material issues in the underlying action. The Class obtained some but not all of the relief sought, which is the epitome of compromise. A reasonable settlement usually requires compromise on both sides and here the compromise the parties negotiated is reasonable. This factor weighs in favor of settlement.
*164 9. The Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of all the Attendant Risks of Litigation
Under this factor, the court discounts the recovery plaintiff would obtain if successful by the risks of not succeeding in the litigation. See Prudential, 148 F.3d at 322. The proposed settlement gave Ocean Shore stockholders immediate benefits while avoiding the risk of continued litigation that could have resulted in little or no relief at all. Indeed, after the stockholders were provided with the additional information, they approved the merger. This factor also weighs in favor of approving the settlement.
B. The Supplemental Disclosures Provided Material Benefits to the Stockholders
Having completed the balancing of the Girsh factors, the next step is for this court to determine whether the benefits obtained are material and in what way they benefited the stockholders. In this court's view, all of the Girsh factors must be weighed against the actual benefit obtained for the Class. It must be Class members who benefit from the settlement and not just attorneys litigating the matter. Here the benefit was non-monetary. Instead of a cash payout, the settlement involved defendants releasing "Supplemental Disclosures" to stockholders. Cases of this type are scant in New Jersey but abundant in other jurisdictions. In the context of stockholder litigation, other courts have found that non-monetary disclosure based settlements may be sufficient. See In re Newbridge Bancorp S'holder Litig., 2016 NCBC 87, *19, 2016 WL 6885882 (N.C. Super. Ct. 2016) ; Gordon v. Verizon Commc'ns, Inc., 148 A.D.3d 146, 149, 46 N.Y.S.3d 557 (N.Y. App. Div. 2017). However, recently some courts have subjected actions similar to this one to much more exacting scrutiny than they had in the past. See, e.g., In re Trulia, Inc. Stockholder Litig., 129 A.3d 884, 886 (Del. Ch. 2016).
*165 This court holds that class action settlements involving non-monetary benefits to the class are subject to more exacting scrutiny. The key determination a court must make is whether the information provided in the supplemental disclosure is material. See id. at 899. Information is material if there is a substantial likelihood that a reasonable stockholder would consider it important in deciding how to vote. Ibid. The naked addition of mere extraneous details to a disclosure statement is insufficient to establish materiality. In recent years, there has been a disturbing trend of stockholder class action litigation, in which the parties quickly accept non-monetary settlements that serve little benefit except to generate attorneys' fees. See id. at 891-96 (detailing the surge of "disclosure claims"). Unless the disclosure provides significant material information that is important in the mind of the stockholder, courts should be reluctant to approve a non-monetary settlement of this *325 type. "[P]ractitioners should expect that the court will continue to be increasingly vigilant in applying its independent judgment to its case-by-case assessment of the reasonableness of the 'give' and 'get' of such settlements." Id. at 898.
Keeping all of the above principals in mind, the court will conduct a careful analysis of the Supplemental Disclosures and what benefit they provided the stockholders. In doing so the court has compared the information that was included in the Original Registration Statement with the information in the Supplemental Disclosures. The Supplemental Disclosures included information concerning the valuation of Ocean Shore and OceanFirst as well as information on the analysis performed by Sandler O'Neill, Ocean Shore's financial advisor, with respect to the merger. The disclosures also included information on potential conflicts of interest for Sandler O'Neill as well as OceanFirst's and Ocean Shore's CEOs.
There are three categories of information contained in the Supplemental Disclosures that materially benefitted stockholders. The first includes details regarding the analyses conducted by Sandler O'Neill. Shortly before defendants announced the merger, *166 Sandler O'Neill provided a "fairness opinion" to Ocean Shore's Board for the purpose of evaluating the proposed merger. The Board reportedly relied on this fairness opinion in recommending that stockholders approve the merger. Importantly, some of the "metrics" and data Sandler O'Neill used in conducting the fairness opinion analyses were not available in the Original Registration Statement. The Supplemental Disclosures included additional information on the valuation of the two companies, such as the total assets, the percentage of loans to deposits, leverage ratio, return on average assets, and other significant financial details for both Ocean Shore and OceanFirst. Also, the Original Registration Statement did not include some data on individual multiples for each independent merger transaction. This information was later made available by the Supplemental Disclosures.
The second category of information involves net income projections with respect to Ocean Shore done by the buyer OceanFirst. These disclosures provided Ocean Shore stockholders with insight into Ocean Shore's future financial performance for the years 2016-2021 from the buyer's perspective. The third category of information involves potential conflicts of interest. In the Supplemental Disclosures, defendants made additional disclosures concerning discussions between Ocean Shore's CEO, Brady, and OceanFirst's CEO about continued employment and consulting arrangements for Brady and other Ocean Shore executive officers at OceanFirst. The Supplemental Disclosures also revealed more information about Sandler O'Neill, including fees it received from Ocean Shore in connection with the transaction, information about its role as a broker-dealer, information about its business relationship with OceanFirst, and fees paid to it by OceanFirst.
Having reviewed the Supplemental Disclosures, the court is satisfied that, because of plaintiff's actions, Ocean Shore stockholders had more meaningful information regarding the valuation of the stock they were asked to give up. They also had more transparency regarding any potential conflict of interest in the transaction. This information is material, and the release of the *167 information prior to the stockholder vote provided stockholders an opportunity to make a better informed decision about how to vote on the proposed merger or whether to sell the stock before its consummation. *326 For all these reasons the court holds the proposed settlement provided a material benefit to the stockholders.
III. FEES
Plaintiff is requesting that the court award attorneys' fees in the amount of $210,000 for services rendered by counsel and reimbursement of legal costs and expenses incurred in the amount of $10,000. Plaintiff is also requesting an incentive award of $1,000, which shall come out of the attorneys' fee award, for plaintiff's efforts in the litigation. Defendants have agreed to pay these amounts.
Although New Jersey courts typically apply the "American Rule" where a prevailing party does not ordinarily recover attorneys' fees, they also recognize exceptions. See R. 4:42-9(a) (describing the types of actions in which the award of attorneys' fees is allowable). In an action certified as a class action, the application for an award of fees and expenses is permitted if the "fee and costs are authorized by law, rule, or the parties' agreement ...." R. 4:32-2(h).
In reviewing a fee award a court should consider, among other factors: (i) the benefits achieved in the action; (ii) the efforts of counsel and the time spent in connection with the case; (iii) the contingent nature of the fee; (iv) the difficulty of the litigation; and (v) the standing and ability of counsel. R.P.C. 1.5 (a).
As discussed previously, the Supplemental Disclosures provided a benefit to the Class, allowing stockholders to make better informed decisions with regard to the merger. Plaintiff's counsel expended a total of 444.5 hours working on the case through the date of the entry of the Settlement Stipulation. Counsel analyzed complex documents with a valuation expert, *168 performed legal research and factual investigation and took part in negotiations. Plaintiff's counsel took the case on a contingent basis, and in so doing, bore the risk of an unsuccessful outcome. Stockholder litigation challenging corporate mergers is generally considered difficult and complex. See United Vanguard Fund, Inc. v. TakeCare, Inc., 727 A.2d 844, 855 (Del. Ch. 1998). And plaintiff's counsel is experienced in this area. For these reasons, the court finds the requested attorneys' fees to be reasonable.
Plaintiff also requests that he be granted an incentive fee of $1,000, which shall come out of the award of counsel's fees. "[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000). See also Dornberger v. Metro. Life Ins. Co., 203 F.R.D. 118, 124-25 (S.D.N.Y. 2001). "An incentive payment to come from the attorneys' fees awarded to plaintiff's counsel need not be subject to intensive scrutiny, as the interests of the corporation, the public, and the defendants are not directly affected." In re Cendant Corp., 232 F.Supp.2d 327, 344 (D.N.J. 2002).
Here, plaintiff assisted in the pre-suit investigation, reviewed, commented, and authorized the filing of the original and amended complaints, maintained ongoing communication with counsel, participated in discussion with counsel about whether to settle the matter, and reviewed and analyzed defendants' confirmatory document production. For these reasons, the requested incentive award is granted.
CONCLUSION
For the reasons stated in this opinion, the court grants plaintiff's motion. The court is satisfied that this matter is appropriate *327 for a class action and plaintiff may represent the interests of the proposed Class. The court grants Class certification. Regarding the proposed settlement, the court formally adopts the application of the Girsh factors and determines the settlement is fair, reasonable *169 and adequate pursuant to Rule 4:32. The court also holds that the non-monetary settlement in this case provides a material benefit to the Class.

The Board consisted of Robert Previti, Steven Brady, Christopher Ford, Frederick Dalzell, Dorothy McCrosson, John Van Duyne, and Samuel Young.

Excluded from the Class are defendants and their immediate family members, any entity in which any defendant has a controlling interest, and any successors-in-interest thereto.

The exact number of Class members is unknown because many shares are held through brokerage firms, banks, custodians, sub custodians and other "nominees" on behalf of the beneficial holders. These nominees were given a choice. They could either provide DRC with the number of individual stockholders they owned shares on behalf of and DRC would send copies that the nominee could mail to their clients, or nominees could provide DRC with a list of names and addresses and DRC would mail the notice to the stockholder directly.

Hershberg never provided proof that he was a member of the Class.

Girsh is referenced by the appellants in Sutter v. Horizon Blue Cross Blue Shield of New Jersey, 406 N.J. Super. 86, 100-02, 966 A.2d 508 (2009). However, in that case, the Appellate Division made their findings based on the inadequacy of the fairness hearing and not the adequacy of the settlement itself. Therefore, the court never applied a Girsh style analysis.