NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0052-23

ANCHOR LAW FIRM,
PLLC, and ANDREW M.
CARROLL, ESQ.,

     Plaintiffs-Appellants,

v.

THE STATE OF NEW JERSEY,
GURBIR GREWAL, in his
official capacity as Attorney
General of the State of New
Jersey, and MARLENE CARIDE,
in her official capacity as
Commissioner of Banking and Insurance,

     Defendants-Respondents.

> **APPROVED FOR PUBLICATION**
>
> **May 9, 2025**
>
> **APPELLATE DIVISION**

Argued April 7, 2025 – Decided May 9, 2025

Before Judges Sabatino, Gummer, and Jacobs.

On appeal from the Superior Court of New Jersey, Law
Division, Mercer County, Docket No. L-1186-21.

Brian J. Molloy argued the cause for appellants
(Wilentz, Goldman & Spitzer, PA, attorneys; Brian J.
Molloy and Daniel J. Kluska, of counsel and on the
brief; Samantha Stillo, on the briefs).

Garen Gazaryan argued the cause for respondents
(Matthew J. Platkin, Attorney General, attorney;

Sookie Bae-Park, Assistant Attorney General, of counsel; Garen Gazaryan, Deputy Attorney General, on the brief).

Diana C. Manning argued the cause for amicus curiae New Jersey State Bar Association (Leary, Bride, Mergner & Bongiovanni, PA, and Bressler, Amery & Ross, PC, attorneys; William H. Mergner, Jr., of counsel; Diana C. Manning and Kyle A. Valenti, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

In this litigation, a law firm and a partner in the firm challenge the constitutionality of the so-called "limited attorney exemption" of the Debt Adjustment and Credit Counseling Act ("DACCA"), N.J.S.A. 17:16G-1 to -9. Plaintiffs are lawyers who, among other things, represent debtors in bankruptcy and collection cases and who endeavor to have their clients' debts reduced or "adjusted" through negotiation and litigation.

As explained herein, DACCA prohibits debt adjusters in New Jersey from operating for a profit. Nonprofit agencies that perform debt adjustment activities must obtain a license from the Department of Banking and Insurance ("DOBI"). Violations of the statute expose defendants to civil penalties. Violators also may be charged with a fourth-degree crime under N.J.S.A. 2C:21-19(f).

When the predecessor statute to DACCA, the Debt Adjusters Law, N.J.S.A. 2A:99A-1 to -4,[1] was first enacted decades ago, it contained an exemption for "any attorney-at-law of this State." However, in 1986 the Legislature narrowed the exemption to protect only attorneys who are not "principally engaged" as debt adjusters. The term "principally engaged" is not defined in the statute.

The present case was sparked when the Office of Attorney Ethics ("OAE") of the New Jersey Supreme Court launched an investigation of plaintiffs. The OAE investigation was stayed, however, when plaintiffs filed this constitutional challenge in the Law Division. The trial court rejected plaintiffs' arguments, concluding that DACCA and its limited attorney exemption are constitutional. The court consequently denied plaintiffs' summary judgment motion, granted defendants' summary judgment motion, and dismissed the complaint with prejudice.

For the reasons that follow, we invalidate the limited attorney exemption within DACCA because it (1) violates principles of separation of powers, and (2) is void for vagueness.

---

[1]  L. 1960, c. 177, §§ 1-5 (1961) (amended 1977 by L. 1977, c. 391, §§ 1-2) (repealed 1978 by L. 1978, c. 95, § 2C:98-2).

A-0052-23

## I.

## A.

To frame our discussion, we begin with a history of the legislation.

Early Legislative History

Effective in 1961, the Legislature enacted the Debt Adjusters Law with the general purpose "to bar debt adjusters from transacting business in this State." Sponsors' Statement to A. 364 (Feb. 1, 1960).[2] A precursor to the statute before us, the 1961 law prohibited and made punishable as a misdemeanor any "act or offer to act as a debt adjuster in this State" unless the actor was covered by an accompanying statutory exemption. N.J.S.A. 2A:99A-2, -4. The law empowered the Superior Court, in an action brought by the Attorney General, to enjoin any non-exempted person from acting or offering to act as a debt adjuster. N.J.S.A. 2A:99A-3.

The term "person" was defined within the 1961 statute as "an individual, partnership, corporation and association." N.J.S.A. 2A:99A-1(a). "Debt adjuster" was broadly defined as

---

[2] Most states have statutes regulating the debt collection business. Some states, like New Jersey, also regulate debt adjustment services, which are sometimes referred to as debt management or debt consolidation services. See Regulation of Debt Collectors, Westlaw 0090 SURVEYS 15 (database updated Oct. 2023).

a person who acts or offers to act for a consideration as an intermediary between a debtor and his creditors for the purpose of settling, compounding, or in anywise altering the terms of payment of any debts of the debtor; and, to that end, receives money or other property from the debtor, or on behalf of the debtor, for payment to, or distribution among, the creditors of the debtor.

[N.J.S.A. 2A:99A-1(b).]

Under the 1961 statute, "any attorney-at-law of this State" (along with other categories of persons not pertinent here) was exempt and, therefore, permitted to engage in debt adjustment activities. N.J.S.A. 2A:99A-4. Specifically, that unqualified exemption stated:

> The following persons shall not be deemed debt adjusters for the purposes of this act: any attorney-at-law of this State; any person who is a regular, full-time employee of a debtor, and who acts as an adjuster of his employer's debts; any person acting pursuant to any order or judgment of court, or pursuant to authority conferred by any law of this State or of the United States; any person who is a creditor of the debtor, or an agent of 1 or more creditors of the debtor, and whose services in adjusting the debtor's debts are rendered without cost to the debtor; and any person who, at the request of a debtor, arranges for or makes a loan to the debtor, and who, at the authorization of the debtor, acts as an adjuster of the debtor's debts in the disbursement of the proceeds of the loan, without compensation for the services rendered in adjusting such debts.
>
> [Ibid. (emphasis added).]

5

In 1978, the Legislature amended the exemptions in the Debt Adjusters Law by adding "any nonprofit social service agency" to the list. N.J.S.A. 2A:99A-4.[3] No other changes were made. Thus, "any attorney-at-law of this State" continued to be exempt and, therefore, not deemed to be a debt adjuster. Ibid.

The 1979 Original Enactment of DACCA

Effective in February 1979, the Legislature enacted the original version of DACCA, N.J.S.A. 17:16G-1 to -8.[4] The legislation did not repeal the Debt Adjusters Law. Instead, DACCA provided for the licensing of nonprofit social service agencies and consumer credit counseling agencies. The new statute allowed those nonprofit agencies to engage in debt adjustment and credit counseling without being subject to the misdemeanor penalty of the Debt Adjusters Law, if they were licensed.

"[T]o provide for greater public accountability," Sponsors' Statement to S. 1005 (Mar. 17, 1978), DACCA required the nonprofit agencies regulated under the statute to obtain a license from the Commissioner of the Department

---

[3] L. 1977, c. 391, §§ 1-2 (1978) (repealed 1979 by L. 1978, c. 95, § 2C:98-2).

[4] L. 1979, c. 16, §§ 1-9 (1979) (amended 1986 by L. 1986, c. 184, §§ 1-6, and 2010 by L. 2009, c. 173, § 1).

of Banking.[5]  N.J.S.A. 17:16G-2.  The statute allowed a nonprofit agency to charge debtors a fee of "1.0% of the gross monthly income of the person to whom the service is rendered, but not more than $15.00 in any one month, which may be waived in the discretion of the licensee."  N.J.S.A. 17:16G-6.  The legislation further specified that no fee can be charged for credit counseling.  N.J.S.A. 17:16G-2.

DACCA directed the Commissioner to "establish fees necessary to meet administrative costs under [the statute]," "promulgate procedures and standards for the issuance or denial of licenses," and "promulgate grounds for and procedures under which licenses may be revoked, suspended, or reinstated."  N.J.S.A. 17:16G-4.  In addition, DACCA mandated that each licensed nonprofit agency had to be bonded and be made subject to audits and public inspection of records.  N.J.S.A. 17:16G-5.  The Legislature specified that violators of DACCA were "subject to a penalty of $500.00 to be collected by . . . [DOBI] in a summary proceeding under the penalty enforcement law."  N.J.S.A. 17:16G-8.

---

[5]  In 1996, the Department of Banking was consolidated with the Department of Insurance, thereby forming the current DOBI.  N.J.S.A. 17:1-1.  L. 1996, c. 45, § 2 (1996).

<u>The September 1979 Repeal and the New Criminal Code Provision</u>

Effective in September 1979, the Legislature repealed the Debt Adjusters Law when it adopted a new Code of Criminal Justice ("the Code").[6] The Code made it a fourth-degree crime—no longer a mere misdemeanor[7]—to "act or offer to act as a debt adjuster" unless the defendant is statutorily exempt. N.J.S.A. 2C:21-19(f). The definition of debt adjuster continued largely as under the Debt Adjusters Law but with slight revisions that are not of consequence here.

No change was made in 1979 to the attorney exemption. The legislation initially omitted from the exemption list "nonprofit social service or consumer credit counseling agency." The Legislature, however, soon corrected its omission and amended the exemptions by adding back that exemption to the Code. N.J.S.A. 2C:21-19(f).[8]

---

[6] <u>L.</u> 1978, <u>c.</u> 95, § 2C:21-19 (1979) (amended 1979 by <u>L.</u> 1979, <u>c.</u> 178, § 42 (N.J.S.A. 2C:21-19(f) added "nonprofit social service or consumer credit counseling agency"), amended Mar. 31 1981 by <u>L.</u> 1981, <u>c.</u> 104, § 1 (no changes to (f)), amended Sept. 24, 1981 by <u>L.</u> 1981, <u>c.</u> 290, § 25 (no changes to (f)), amended 1986 by <u>L.</u> 1986, <u>c.</u> 184, § 6 (major changes), amended 1998 by <u>L.</u> 1997, <u>c.</u> 426, § 2 (major changes), amended 2010 by <u>L.</u> 2009, <u>c.</u> 173, § 2 (major changes)).

[7] The adoption of the Code eliminated the nomenclature and classification of a misdemeanor. N.J.S.A. 2C:1-4(d).

[8] <u>L.</u> 1979, <u>c.</u> 178, § 42 (1979).

The 1986 Legislation and the Narrowing of the Attorney Exemption

Effective in 1986, the Legislature finally aligned DACCA and the criminal provisions of N.J.S.A. 2C:21-19(f).[9]   Among other things, DACCA was amended to clarify that only a "nonprofit social service agency or nonprofit consumer credit counseling agency," licensed by the DOBI Commissioner, shall "act as a debt adjuster" and "is authorized to offer credit counseling."  N.J.S.A. 17:16G-2.

The overall objectives of the Legislature were clear.  According to the Sponsors' Statement to S. 2798 (Mar. 7, 1985):

> This bill amends P.L. 1979, c. 16 (C. 17:16G-l et seq.) and N.J.S. 2C:21-19 to correct widespread abuses in the consumer debt adjustment and credit counseling industry.  The term "debt adjuster" has been broadened to include anyone who acts as an intermediary between a debtor and creditors.  Those persons who have heretofore been outside of the licensing provisions of the act will now be prohibited from engaging in debt adjustment without a license.  To enable the Commissioner of Banking to properly enforce the law, the commissioner has been granted the power to enjoin any person from continuing to engage in practices thought to be in violation of the act.  The definition of "debt adjuster" found in N.J.S. 2C:21-19 has been amended so that definition used in the New Jersey Code of Criminal Justice will be the same as that used in the licensing law.

_____

[9]  L. 1986, c. 184, §§ 1-6, (1986) (amended 2010 by L. 2009, c. 173, § 1).

A-0052-23

[(Emphasis added).]

However, the legislative history does not discuss the narrowing of the attorney exemption.

Of central importance to this appeal, the Legislature in 1986 replaced the statute's exemption for New Jersey attorneys with the following limited exemption confined to those attorneys who were "not principally engaged as [] debt adjuster[s]":

> (1) "Debt adjuster" means a person who either (a) acts or offers to act for a consideration as an intermediary between a debtor and his creditors for the purpose of settling, compounding, or otherwise altering the terms of payment of any debts of the debtor, or (b) who, to that end, receives money or other property from the debtor, or on behalf of the debtor, for payment to, or distribution among, the creditors of the debtor.
>
> (2) The following persons shall not be deemed debt adjusters: (a) an attorney-at-law of this State who is not principally engaged as a debt adjuster; (b) a person who is a regular, full-time employee of a debtor, and who acts as an adjuster of his employer's debts; (c) a person acting pursuant to any order or judgment of court, or pursuant to authority conferred by any law of this State or the United States; (d) a person who is a creditor of the debtor, or an agent of one or more creditors of the debtor, and whose services in adjusting the debtor's debts are rendered without cost to the debtor; or (e) a person who, at the request of a debtor, arranges for or makes a loan to the debtor, and who, at the authorization of the debtor, acts as an adjuster of the debtor's debts in the disbursement of the proceeds of the

10

loan, without compensation for the services rendered in adjusting those debts.

[N.J.S.A. 17:16G-1(c) (emphasis added).]

Any violations remained subject to up to a $500 civil penalty. N.J.S.A. 17:16G-8. Furthermore, under the Code, it is a fourth-degree crime to act or offer to act as an unlicensed debt adjuster unless the defendant is exempt. N.J.S.A. 2C:21-19(f).

Further Amendments Since 1986

The statute has been amended several more times since the 1986 revision. None of those amendments altered the terms of the limited attorney exemption.[10]

---

[10] Effective in January 1998, the Legislature amended N.J.S.A. 2C:21-19(f) to include matching portions of N.J.S.A. 17:16G-1(c), by adding to the Code the civil statute's definition of "debt adjuster" and the limited attorney exemption. L. 1997, c. 426, § 2 (1998). Effective in 2006, the Legislature amended DACCA by making violators subject to a civil penalty of $1,000 for the first offense and not more than $5,000 for the second and each subsequent offense under N.J.S.A. 17:16G-8. L. 2005, c. 287 § 2 (2006). That 2006 amendment also added a list of duties of licensees "acting as a debt adjuster." N.J.S.A. 17:16G-9. Again, no change was made to DACCA's limited attorney exemption. Then, effective in 2010, the Legislature amended N.J.S.A 2C:21-19(f) to prescribe that: "Any person who shall act or offer to act as a debt adjuster without a license as required by P.L.1979, c.l6 (C.l7:16G-1 et seq.), unless exempt from licensure pursuant to that act, shall be guilty of a crime of the fourth degree." (Emphasis added). It also amended DACCA by adding an exemption for certain counseling agencies and by amending the definition of "debt adjuster" but no change was made to the limited attorney exemption. L. 2009, c. 173, § 1 (2010).

There is no published case law addressing the exemption. Hence, the present appeal is a case of first impression.

B.

Plaintiff Anchor Law Firm represents clients in New Jersey and other states in numerous practice areas, including but not limited to, litigation defense and debt settlement. Co-plaintiff Andrew M. Carroll is a New Jersey attorney who provides legal services in his private practice to individuals and businesses in various legal areas, including bankruptcy. He is a member of the Anchor law firm, responsible for New Jersey debtor-creditor matters for Anchor's clients.

The OAE Investigation

In or around March 2021, the OAE of the New Jersey Supreme Court opened an investigation to determine: (1) whether Carroll was "principally engaged" as a debt adjuster in violation of DACCA, and (2) whether Anchor engages "principally" in the practice of debt adjustment services in violation of DACCA. Sometime thereafter, the OAE administratively stayed its investigation pending the outcome of this litigation.

A-0052-23

In June 2021, plaintiffs filed a complaint against defendants[11] in the Law Division, seeking a declaratory judgment that the enactment and enforcement of DACCA, as revised in 1986, is unconstitutional because it prohibits attorneys from engaging in the practice of law if they are deemed to be "principally engaged" in a legal practice that involves debt adjustment. Their complaint alleges that DACCA's limited attorney exemption violates the New Jersey Constitution's doctrine of separation of powers (count one) and, moreover, is unconstitutionally vague and overbroad (counts two and three). The complaint further alleges that defendants have violated their federal and state civil rights (count four).

Defendants are the State of New Jersey, along with the Attorney General and the DOBI Commissioner in their official capacities. Defendants contend the statute is neither unconstitutional or violative of civil rights. They maintain the limited attorney exemption does not encroach on the Judiciary's authority over the practice of law, and, moreover, is reasonably clear and not overbroad.

---

[11] The OAE is not a named defendant. The record contains no documentation of the OAE's investigation, apart from the representations about it in the complaint. We presume plaintiffs have waived the confidentiality of the investigation by bringing this lawsuit.

Deposition of DOBI's Chief of Consumer Finance Operations

During discovery, plaintiffs served notice to DOBI pursuant to Rule 4:14-2(c) to take the deposition of a designated agency representative regarding various topics concerning DACCA and its limited attorney exemption. DOBI designated its Chief of Consumer Finance Operations, ("the DOBI official"), as its sole representative to gather documents and testify about the Act.

According to his deposition testimony, the DOBI official joined the agency in 2012 and then held a variety of advanced investigator positions until he became DOBI's Chief of Consumer Finance Operations in 2021. In his position, the DOBI official "oversee[s] the licensing and examinations functions of the Office" and the enforcement of DACCA, supervises nine people, including investigators and examiners, and reports directly to DOBI's Assistant Director.

The DOBI official holds a bachelor's degree in political science and testified that he had received a "very high level" of in-house training on DACCA's licensing procedures in 2011. However, in his current position, he has "minimal job responsibilities" concerning the Act—"definitely less than" five percent of his time and responsibilities. The DOBI official also acknowledged that he is not a lawyer nor a licensed debt adjuster, never worked

14

for a debt adjuster, and is not qualified to provide legal opinions on any statute's interpretation, including DACCA. Over repeated objections by defendants' counsel, plaintiffs asked the DOBI designated representative three hypotheticals: (1) whether DACCA allows an individual attorney to handle debt adjustment matters; (2) whether DACCA restricts bankruptcy attorneys; and (3) whether DACCA restricts attorneys who perform "excellent work."

First, the DOBI official agreed that an attorney is allowed to handle debt adjustment only if he or she is not principally engaged as a debt adjuster but cannot apply for or receive a DACCA license from DOBI. He explained that the term "principally engaged" in the statute meant "[t]he meaning that's in the dictionary," that is, "[p]rincipally would be mainly" and "mainly" would "be based off the facts" of each case. More specifically, the official stated he would have to consider "[t]he entirety of the scope of the activities" conducted by the attorney and then he would need to seek legal advice on DACCA's interpretation and application from the agency's counsel, the Attorney General.

The DOBI official further acknowledged that the agency had no rule, criteria, or methodology to determine when an attorney is "principally engaged" as a debt adjuster. The official did not know whether principal engagement would be measured or assessed on a daily, weekly, monthly, or annual basis, or

15

on the number of clients or cases, or the revenue received, or whether an attorney would be considered separate from his or her law firm. In addition, DOBI had no bulletins or guidance documents explaining the attorney exemption. Nevertheless, even though the DOBI official testified that he believed that DACCA's intent was not to restrict an attorney's legal work, he agreed that an attorney in this State who is principally engaged as a debt adjuster would be subject to a fourth-degree crime under N.J.S.A. 2C:21-19(f).

Second, the DOBI official agreed that a bankruptcy attorney appearing in bankruptcy court, representing a debtor client and trying to adjust, compromise or modify a creditor's claim, would be acting as a debt adjuster and therefore violating DACCA if the attorney did nothing else but debt adjustment.[12] However, according to the official, if that attorney primarily practiced another type of law, such as litigation or family law, the attorney would not violate DACCA.

Consequently, the DOBI official agreed that DACCA imposes a restriction on how much debt adjustment work a licensed New Jersey attorney

---

[12] The DOBI official did not address, nor have the parties' briefs on appeal addressed, N.J.S.A.17:16G-1(c)(2)(c), which grants a DACCA license exemption for "a person acting pursuant to any order or judgment of court, or pursuant to authority conferred by any law of this State or the United States."

16

can do, but he offered no opinion as to where that line fell or what factors would be measured. He further agreed that DOBI had issued no set of criteria and has not proposed any guidance to help attorneys comply with DACCA's statutory requirements.

The DOBI official testified that, to his knowledge, there has been only one DOBI enforcement proceeding against an attorney and his law group for allegedly violating DACCA by "conduct[ing] debt adjustment in New Jersey without first obtaining a license from the Department," in violation of N.J.S.A. 17:16G-2(b). In an April 2014 consent order reached in that case—which was supplied in the record in this appeal—there was no admission of liability, and the law group agreed to "cease engaging in the business of debt adjustment in the State of New Jersey without the appropriate licenses issued by [DOBI]," to pay $2,500 restitution to the client, and to pay a $500 civil administrative penalty. The DOBI official acknowledged, however, that neither the attorney nor the law group would have been eligible for a DOBI license.

Third, the DOBI official agreed that an attorney in New Jersey could violate the Act by being principally engaged in debt adjustment work, regardless of whether that attorney did "excellent work" or whether the attorney's clients were "very happy."

A-0052-23

The DOBI Bulletins

The DOBI official produced two DOBI Bulletins concerning DACCA that were issued by the Commissioner in 2008. The Bulletins underscored regulatory concerns about the debt adjustment business and the importance of compliance with DACCA but provided no specific guidance of pertinence here about the meaning of debt adjustment, nor DACCA's limited attorney exemption.

DOBI issued the first Bulletin in July 2008, which announced the agency "ha[d] become aware of a substantial amount of advertising by entities that are offering services described as 'debt consolidation,' 'debt settlement,' 'foreclosure consulting' and 'debt management'" and was "concerned that consumers may be subjecting themselves to financial risk by working with entities offering such services, which may not be licensed by [DOBI]." Dep't of Banking & Ins. Bulletin 08-13 (July 28, 2008). Accordingly, DOBI reminded interested parties "that, unless qualified for an exemption as set forth in N.J.S.A. 17:16G-1(c), only those entities that are licensed to act as a debt adjuster . . . may perform debt adjustment services . . . for New Jersey residents." Ibid. (emphasis added).

DOBI issued the second Bulletin in December 2008, which announced the agency "ha[d] become aware that unlicensed persons and entities and certain licensed mortgage bankers, mortgage brokers, and registered solicitors have

advertised and/or performed services described as 'loan modification assistance,' 'loan modification negotiation,' 'loss mitigation consulting' and 'foreclosure prevention consulting.'" Dep't of Banking & Ins. Bulletin 08-27 (Dec. 19, 2008). The purpose of the Bulletin was "to advise the regulated community and the public that such activity is subject to [DACCA]." Ibid.[13]

Summary Judgment Motion Arguments

The parties respectively moved and cross-moved for summary judgment. Plaintiffs argued DACCA's limited attorney exemption is unconstitutional because it impermissibly infringes on the Supreme Court's "exclusive jurisdiction over the terms and conditions of a law license" and, therefore, "violates the separation of powers clause in the New Jersey State [C]onstitution" by regulating the type of "work that an attorney can do." Plaintiffs further asserted that DACCA violates their state and federal due process rights by being unconstitutionally vague and overbroad. They argued that the exemption is vague and "not defined" and "[t]he enforcing agency doesn't even know what it means . . . [or] how to measure it." Also, they contended the exemption is

---

[13] Comparably, defendants have supplied in their appendix a "white paper" from the State of New York detailing the harms of certain nefarious debt adjustment practices. New York City Bar Consumer Affairs and Civil Court Committees, Profiteering From Financial Distress: An Examination of the Debt Settlement Industry (May 2012).

A-0052-23

overbroad "because even if there were a legitimate purpose . . . [it encompasses] too many constitutionally protected activities." In addition, plaintiffs argued the limited attorney exemption violates their rights under the First Amendment by unconstitutionally restricting the amount of debt adjustment services and similar competent advice that attorneys can provide to their clients.

As for remedy, plaintiffs clarified they were "not seeking to set aside the entire [DACCA statute], but [only] . . . the limited attorney exemption." They sought a declaration that all attorneys are exempt from DACCA, similar to the exemption as it existed before 1986.

Defendants responded that the statute has a presumption of constitutionality because there is no fundamental right to being an attorney or a debt adjuster, and it was plaintiffs' burden to prove otherwise. They further contended that the meaning of "principally engaged" must take into account "the totality of the practice of an individual attorney." They argued the exemption is not vague as "[i]t has a well, understood meaning" and presented no First Amendment rights issue.

Defendants further urged the court to dismiss plaintiffs' declaratory judgment action as a matter of law because DACCA serves an important public

purpose. They maintained DACCA and its limited attorney exemption does not violate the separation-of-powers principles and is not vague or overbroad.

The Trial Court's Decision

The trial court issued an oral decision on July 27, 2023. It granted summary judgment to defendants, finding no merit to plaintiffs' challenges to DACCA's limited attorney exemption. Initially, the court observed that no genuine issues of material fact were in dispute and the matter could be decided as a matter of law under Rule 4:46-2(c). As requested by defendants, the court disregarded the DOBI official's deposition testimony insofar as it presented legal opinions.

The court concluded that DACCA's attorney exemption does not violate the separation-of-powers doctrine, is not unconstitutionally vague or overbroad, and does not violate any fundamental rights. Hence, the court granted defendants' summary judgment motion, denied plaintiffs' cross-motion, and dismissed the complaint in its entirety with prejudice.

In its oral analysis, the court applied a presumption of constitutionality to the statute and held that plaintiffs had not met their "heavy burden" to overcome that presumption. The court discerned "no fundamental schism [exists] between DACCA and [the] judicial interest." The court found that "DACCA does not

21

interfere with the sound administration of the judicial system [n]or undermine the proper regulation of the ethical conduct of members of the [J]udiciary and bar."  As the court perceived it, "DACCA does not prohibit an attorney's right to practice law; rather, DACCA regulates a distinct business of debt adjustment that contemplates [that] lawyers . . .  can provide debt adjustment services to New Jersey consumers as long as that debt adjustment activity is not their principal activity."

Turning to the vagueness and overbreadth issues, the court ruled that the limited attorney exemption was not "substantially incomprehensible."  The court rejected plaintiffs' argument of facial invalidity because the provision is not "impermissibly vague in all its applications."  The court reasoned that, although DACCA does not define the term "principally engaged," the language nonetheless "presents fair and straightforward notice to New Jersey attorneys for how to comply with it."  The court referred to dictionary definitions of the words "principally" and "engage" as connoting a lawyer who is "chiefly" or "primarily" "participating in" the debt adjustment business, and concluded those concepts were sufficiently clear.

The court denied plaintiffs' claims of overbreadth, noting defendants have "a legitimate interest in protecting consumer debtors from abusive and

fraudulent practices" and that the "actual impact" on attorneys is "far more limited" than plaintiffs assert. Lastly, the court rejected plaintiff's claims of free speech and civil rights violations.

This Appeal

Plaintiffs appealed. Given the nature of the issues, we invited the State Bar Association to move to participate as amicus curiae, and we have considered its brief and oral arguments, which are supportive of plaintiffs' position. In the meantime, the OAE has continued to hold its investigation of plaintiffs in abeyance, although counsel advised us at oral argument that other matters concerning DACCA's limited attorney exemption are pending.

Because the appeal arises from the grant of summary judgment, we consider the issues and the record in a light most favorable to plaintiffs. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

II.

A.

The modern Constitution our State adopted in 1947 is a remarkable achievement that is "well-known and much envied." Robert F. Williams & Ronald K. Chen, The New Jersey State Constitution xxiii (3d. ed. 2024) (Preface to the Second Edition by Professor Williams). As former Governor and Chief

Justice Richard J. Hughes observed, "[a] rare, once-in-a-century political miracle occurred" when both Republicans and Democrats in New Jersey, "pushed and prodded by the reformers, agreed upon a new constitution." Id. at xix (Foreword to the First Edition by Richard J. Hughes). "Upon submission to the voters, it was adopted by a large margin." Ibid.

The Judicial Article

As our former Governor and Chief Justice described it, the "centerpiece" of our modern State Constitution is the Judicial Article codified in Article VI. Ibid.; see N.J. Const., art. VI. As he explained, Article VI confers on the Supreme Court

> unprecedented administrative authority, vested in the chief justice, to control the administration of all courts in New Jersey. It gave rule-making flexibility to the New Jersey Supreme Court, unequaled in any other jurisdiction, and insulated the court system from political interference. It accommodated easy transition of issues between courts of law and equity for expeditious consideration. These modern court system tools are unmatched in any other American jurisdiction. New Jersey's court system has become the envy of practitioners and scholars all over the country.
>
> [Ibid.]

An important component of the Judicial Article germane to the appeal before us is Article VI, Section 2, Paragraph 3. That provision declares:

3. The Supreme Court shall make <u>rules governing the administration of all courts in the State</u> and, subject to the law, <u>the practice and procedure in all such courts</u>. The Supreme Court shall have jurisdiction over the admission to <u>the practice of law and the discipline of persons admitted</u>.

[<u>N.J. Const.</u>, art. VI, § 2, ¶ 3 (emphasis added).]

Fundamentally, Paragraph 3 of Section 2 establishes that the Supreme Court "has jurisdiction over the legal profession." Williams & Chen, at 166. "These grants of power to the Supreme Court act as limits on legislative power in these areas." <u>Ibid.</u> Unlike some other states in which the regulation of the legal profession is exercised by bar associations or other bodies, in New Jersey our highest court has the direct authority and responsibility to prescribe what attorneys who practice here can or cannot do.

In the seminal case of <u>Winberry v. Salisbury</u>, 5 N.J. 240, 247 (1950), authored by Chief Justice Vanderbilt shortly after the 1947 Constitution became effective, the Court made clear that the phrase "subject to law" within Paragraph 3 refers only to substantive law. <u>Winberry</u> instructed that the Court's domain over legal practice and procedure and its rule-making powers are preeminent. <u>Id.</u> at 249-55. Substantive law, which can be enacted by the other branches of government, defines rights and duties, whereas procedures and practices furnish

the mechanisms through which such rights and duties are enforced in the courts. Id. at 247-48.

Hence, Winberry holds "the rule-making power of the Supreme Court is not subject to overriding legislation, but [also] that it is confined to practice, procedure and administration as such."  Id. at 255.  Thus, our "Supreme Court has plenary authority to regulate the legal profession in New Jersey."  In re Op. No. 745 of Sup. Ct. Advisory Comm. on Pro. Ethics, 260 N.J. 105, 112 (2025) (internal quotation marks omitted).

Since Winberry was decided in 1950, case law has recognized the line between substantive law, on the one hand, and, on the other hand, the regulation of lawyers and court procedures, is sometimes unclear.  See, e.g., State v. Leonardis, 73 N.J. 360, 374 (1977) (recognizing "in many situations procedure and substance are so interwoven that rational separation becomes well-nigh impossible") (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 559 (1949) (Rutledge, J., dissenting)).

Separation of Powers

"The constitutional spirit inherent in the separation of governmental powers contemplates that each branch of government will exercise fully its own powers without transgressing upon powers rightfully belonging to a cognate

26

branch." Knight v. City of Margate, 86 N.J. 374, 388 (1981); see also N.J. Const., art. III, ¶ 1. The Constitution "denotes not only the independence but also interdependence among the branches of government" and "contemplates that the several branches will cooperate to the end that government will succeed in its mission." Knight, 86 N.J. at 388. Consequently, the Supreme Court "has the authority . . . to permit or accommodate the lawful and reasonable exercise of the powers of other branches of government even as that might impinge upon the Court's constitutional concerns in the judicial area" depending on the nature and extent of the encroachment. Id. at 390-91.

Case Law Applications

Given the possibilities of uncertainty and overlap, the courts have attempted to clarify how far the Judiciary's exclusive domain extends, and to identify discrete subject matters on which the Legislature has the authority to enact statutes that may affect the conduct of attorneys.

For instance, in Knight, 86 N.J. at 377-78, several attorneys who were former part-time municipal court judges in Atlantic County brought a declaratory judgment action challenging the constitutionality of a statute that broadly prohibited members of the Judiciary, including municipal court judges, from "dealings" with casinos. They argued the statute was unconstitutional and

impinged upon the Supreme Court's exclusive authority over our courts and judges. Id. at 378-79. The trial court agreed and invalidated the statute. Ibid. The Supreme Court reversed and held that the statute was constitutional, reasoning that the law "serves a significant governmental purpose," does not "in any way interfere with the sound administration of the judicial system or undermine the proper regulation of the ethical conduct of members of the judiciary and the bar," and "does not interfere with the Supreme Court's administration of the court system and regulation of the [J]udiciary and legal profession." Id. at 391-95.

Thereafter, applying Knight, a court can consider whether the Judiciary "has fully exercised its power with respect to the matter at issue" and, if not, "whether the statute serves a legitimate legislative goal, and, 'concomitantly, does not interfere with judicial prerogatives or only indirectly or incidentally touches upon the judicial domain.'" Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 163 (2003) (quoting Knight, 86 N.J. at 389-91). In that way, "the Court may 'accommodate legislation that touches upon an integral area of judicial power,' but only if the statute has 'not in any way interfered with [the] Court's constitutional obligation [to] insure a proper administration of the court system.'" Crespo v. Crespo, 408 N.J. Super. 25, 33 (App. Div. 2009) (alteration

A-0052-23

in original) (emphasis added) (citations omitted) (quoting N.J. State Bar Ass'n v. State, 387 N.J. Super. 24, 49 (App. Div. 2006), and Passaic Cnty. Prob. Officers' Ass'n v. Passaic Cnty., 73 N.J. 247, 255 (1977)).

By comparison, in State v. Rush, 46 N.J. 399, 410 (1966), a case involving the services of appointed counsel in criminal cases, the Court declared it is "the exclusive responsibility of the [J]udiciary to determine the obligation of the legal profession." The Court recognized in Rush that in some instances legislation has been enacted that affects the practice of law, and that such statutes at times "have been accepted by the judicial branch in a spirit o[f] comity rather than out of constitutional compulsion." Id. at 410-11.

As further illustrations, the Court has construed its authority under the Constitution broadly to enact and enforce a court rule limiting counsel fees in personal injury cases. Am. Trial Laws. Ass'n v. N.J. Sup. Ct., 66 N.J. 258, 267 (1974). The Court has also directed that persons who file ethics complaints against attorneys have immunity for those actions. In re Hearing on Immunity of Ethics Complainants, 96 N.J. 669, 679 (1984). Further, the Court struck down part of a statute that purported to authorize the imposition of frivolous-litigation sanctions against not only litigants but also attorneys who engage in such conduct. McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 557-

58, 560 (1993).[14]  The Court, in the spirit of comity, later enacted a court rule,

Rule 1:4-8, establishing parallel means to sanction attorneys.

B.

The separation-of-powers question here therefore hinges on whether

N.J.S.A. 17:16G-1(c)(2)(a), as applied to attorneys who principally conduct

their legal practice for clients seeking an adjustment of their debts, represents

an undue encroachment on the Court's exclusive authority to regulate attorneys.

We conclude it is.

To analyze this question of encroachment, we must consider what is meant

by "the practice of law."  Our Supreme Court has long recognized the practice

of law is not "limited to the conduct of cases in court but is engaged in whenever

and wherever legal knowledge, training, skill and ability are required."  Stack v.

---

[14] There are many other examples of excessive encroachment, which we need not cite exhaustively here.  See, e.g., In re P.L. 2001, Chapter 362, 186 N.J. 368, 392 (2006) (invalidating a statute that attempted to authorize probation officers to carry firearms and arrest probation violators); CWA Local 1044 v. Chief Just., 118 N.J. 495, 509 (1990) (in which the Court held its constitutional authority over the court system justified its refusal to adhere to a statute that required the negotiation of agency fee arrangements with labor unions representing judicial employees).  But see In re Op. 705 of Advisory Comm. on Pro. Ethics, 192 N.J. 46, 58 (2007) (upholding the application of the Conflicts of Interest Law that disqualified a former government lawyer and his law firm from handling a matter in which the lawyer had participated as a state employee).

P.G. Garage, Inc., 7 N.J. 118, 121 (1951). "[I]t is clear that the 'practice of law' is not limited to litigation, 'but extends to legal activities in many non-litigious fields.'" State v. Rogers, 308 N.J. Super. 59, 66 (App. Div. 1998) (quoting N.J. State Bar Ass'n v. N. N.J. Mortg. Assocs., 32 N.J. 430, 437 (1960)).

Of particular relevance here, the "practice of law" has been held specifically to encompass the "rendering of advice and assistance in obtaining extensions of credit and compromises of indebtedness." Id. at 67 (emphasis added) (citing Appell v. Reiner, 43 N.J. 313, 316 (1964) (concluding that a New York attorney who was not admitted to the New Jersey bar had engaged in the "practice of law" within this State, through his efforts to negotiate with creditors a compromise of their claims against his clients and his "attempt to solve [the clients'] financial difficulties").

Bearing in mind this broad conception of legal practice, we consider the following endeavors and whether they can be regarded as the practice of law when performed by an attorney:

- Defending a client in a collections case and advocating the court to reject or reduce the amount of the creditor's claim? Yes.

- Negotiating with a creditor on behalf of a client, either before or during litigation? Yes.

- Preparing and filing a bankruptcy petition on behalf of a client? Yes.

31

- Evaluating a client's debt liabilities and whether they are collectible under the law in preparation for negotiating or litigating on behalf of the client? Yes.

- Advising a client with debts how best to discharge, consolidate, or compromise those debts in a lawful manner? Yes.

The above non-exhaustive list of activities that can comprise the practice of law for clients with debts appear to fall within DACCA's broad definition of "debt adjuster" in N.J.S.A. 17:16G-1(c)(1), which sweeps in those who "act[] or offer[] to act for a consideration as an intermediary between a debtor and his creditors for the purpose of settling, compounding, or otherwise altering the terms of payment of any debts of the debtor."  Hence, subject to the limited attorney exemption recited in DACCA, a particular task can amount to both the practice of law and a debt adjustment activity at the same time.

In American Budget Corp. v. Furman, 67 N.J. Super. 134, 143-44 (Ch. Div. 1961), aff'd o.b., 36 N.J. 129 (1961), a case involving the 1961 Debt Adjustment Law that had contained a full statutory exemption for attorneys, the Court recognized why such an exemption for attorneys was constitutionally appropriate.  The plaintiff in Furman was a debt counseling corporation that brought a declaratory judgment action against the Attorney General seeking a declaration that the original Debt Adjusters Law was unconstitutional.  Id. at

32

136-37. The Chancery Division upheld the constitutionality of the statute, observing that "[i]t is plain by now that in their activities debt adjusters may encroach upon the practice of law," and thus found the prohibitions within the statute aimed at non-lawyers served a valid public purpose. Id. at 143. The chancery judge noted that "[t]he business of debt adjust[ing], at times referred to as debtor counselling, budget planning, debt pooling or prorating, has been the subject of legislation in various states" and "[a] number of states have enacted legislation which may be characterized as prohibiting the business of debt adjust[ment], but expressly exempting lawyers." Id. at 138 (emphasis added).

The court in Furman explained why attorneys were then appropriately exempted from the Debt Adjusters Law:

> The effect of L. 1960, c. 177, is to prohibit the practice of debt adjusting for a fee, except as to lawyers. . . . Attorneys do not advertise and are subject to a high ethical standard. Moreover, services encompassed by the statutory definition of debt adjuster are often an integral and essential part of an attorney's job when he represents a debt-ridden client. The exemption of attorneys also bears a rational relation to the legislative aim.
>
> . . . .
>
> It is quite logical for the Legislature to exempt from the operation of this statute those groups whose

> activities are not likely to harm the segment of society the statute seeks to protect. These exemptions bear a reasonable relation to the end to be achieved and they operate without arbitrary discrimination upon all those similarly situated.
>
> [Id. at 143 (citations omitted).]

Defendants argue DACCA creates no undue encroachment on the Judiciary's exclusive authority over the practice of law because the limited exemption only permits the DOBI Commissioner and criminal prosecutors to fine and punish lawyers who are "principally engaged" in debt adjustment activities. This begs the question of whether the State Constitution[15] permits the Executive Branch of government to regulate the debt adjustment activities of any lawyers. We conclude it does not, at least when the attorney is engaged in the practice of law.

---

[15] We reject defendants' reliance on Ferguson v. Skrupa, 372 U.S. 726, 727 (1963), in which the United States Supreme Court upheld a restriction on the business of debt adjustment when practiced by attorneys, specifically a Kansas debt adjustment statute that limited the practice of debt adjustments to lawyers "as an incident to the lawful practice of law." The Supreme Court's holding in Ferguson was based on a federal constitutional challenge under the Due Process Clause, not principles of separation of powers under a state constitution. As our post-1947 jurisprudence in New Jersey has made clear, there are circumstances in which governmental action that is allowable under the federal constitution may be disallowed under our State Constitution. See, e.g., State v. Hempele, 120 N.J. 182, 196-98 (1990) (prohibiting warrantless searches of curbside trash receptacles under the New Jersey Constitution, even though they are permissible under the Fourth Amendment).

The Judiciary's exclusive authority over the practice of law is not invaded merely because DACCA only covers a non-exempted subset of attorneys. Although principles of separation of powers do not mandate "watertight" compartments to coexist within the three branches of government, Communications Workers of America, AFL-CIO v. Florio, 130 N.J. 439, 449-50 (1992), an encroachment must not intrude on the core prerogatives of a particular branch.

In this case, DACCA is exposing lawyers who "principally" engage in debt adjustment matters to heavy civil and criminal sanctions. That exposure can easily discourage lawyers from undertaking the representation of clients who are beset with debts and who could benefit from their expertise and services. As the court rightly observed in Furman, the activity of debt adjustment is "often an integral and essential part of an attorney's job when [the attorney] represents a debt-ridden client." 67 N.J. Super. at 143.

As plaintiffs have pointed out, DACCA's focus on attorneys who principally engage in debt-adjustment legal services has the untoward capacity to penalize lawyers who have developed expertise and a specialty in the field that has become their main area of practice, while at the same time affording an exemption to lawyers who practice that kind of law only occasionally. We must

remember that the Judiciary's regulation of the practice of law is largely aimed at serving the public interest. <u>Sullivan as Tr. of Sylvester L. Sullivan Grantor Retained Income Tr. v. Max Spann Real Est. & Auction Co.</u>, 251 N.J. 45, 61 (2022). By singling out and penalizing debt-adjustment lawyers who specialize in the field and devote most of their legal practice to it, DACCA's limited exemption arguably may disserve the public rather than serve it.[16]

As we will discuss in Part III, the vagueness of the term "principally engaged" within the statutory exemption strengthens the rationale for finding a separation-of-powers violation here. Under that undefined term, lawyers need to guess whether and when they are crossing the line from a non-principal status to a principal status as a debt adjuster. The risks involved in that guesswork also can drive competent attorneys away from this valuable specialty.

---

[16] <u>See also</u> RPC 5.6(b), which prohibits any agreement between private parties to limit an attorney's right to practice law. We applied that RPC in <u>Cardillo v. Bloomfield 206 Corp.</u>, 411 N.J. Super. 574, 580 (App. Div. 2010), invalidating an agreement between the plaintiff's attorney and the defendants as part of a settlement wherein the attorney agreed to refrain from representing clients adverse to the defendants in the future. We deemed the agreement unenforceable in <u>Cardillo</u> because it restricted the attorney's right to practice law in violation of RPC 5.6(b), which is intended to ensure "public [access] to lawyers who . . . might be the very best available talent." <u>Id.</u> at 578-80.

A-0052-23

The fact that an official within DOBI who is not a lawyer and who has no accredited legal education is entrusted with assessing whether an attorney's professional services violate DACCA is also concerning. Although we ascribe good-faith intentions to that official and recognize the forthright tenor of his deposition testimony, the Judiciary's constitutional role in regulating and disciplining attorneys is entrusted instead to the OAE and the ultimate oversight of the Supreme Court.

We are mindful that the OAE is the agency that has launched an investigation of plaintiffs, but apparently that investigation, as described to us, is predicated on whether plaintiffs have violated the debt adjustment laws. If we hold DACCA's limited attorney exemption is unconstitutional, then the OAE can decide whether it has other grounds to probe into plaintiffs' activities under the Rules of Professional Conduct.[17]

We decline to overlook a separation-of-powers defect in the statutory scheme merely because the enforcement of DACCA against attorneys has been infrequent. To be sure, the parties have identified only one past situation, which was resolved amicably via a consent order, in which attorneys were sanctioned

---

[17] Nothing in this opinion precludes the Supreme Court from promulgating and the OAE from enforcing specific attorney standards in this field of endeavor.

for engaging in conduct that violated DACCA. Yet we do not know if there have been other situations involving lawyers who were investigated but did not result in formal enforcement action. Nor can we be confident that some attorneys may have eschewed debt-adjustment legal work out of concern that they could be perceived to violate the statute through their representation of debtors, or that their professional liability insurers have raised those concerns in underwriting their premiums. The rarity of actually-imposed sanctions does not mean the institutional encroachment is trivial.

In sum, even affording the statute a presumption of constitutional validity, State v. Lenihan, 219 N.J. 251, 266 (2014), we agree with plaintiffs and the amicus State Bar Association that the limited attorney exemption in DACCA impermissibly encroaches upon the Judiciary's exclusive authority over the practice of law under Article VI, Section 2, Paragraph 3 of the State Constitution. Simply put, the Legislature properly adhered to the constitutional boundary in passing the 1961 law but crossed over the line in the 1986 enactment.

III.

As a separate constitutional claim of invalidity, we address plaintiffs' argument that the limited attorney exemption within DACCA is impermissibly vague. This, too, supplies an independent basis to nullify the provision.

A.

Generally speaking, "[a] statute 'is void if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" Lenihan, 219 N.J. at 267 (citation and internal quotation marks omitted) (quoting Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 279-80 (1998)). Vagueness poses a constitutional issue in that it "may create a denial of due process due to a failure to provide adequate and fair notice or warning." Ibid. (citing Karins v. Atl. City, 152 N.J. 532, 544 (1998)).

"A statute may be challenged as being either facially vague or vague 'as-applied.'" Ibid. (quoting State v. Maldonado, 137 N.J. 536, 563 (1994) (quoting State v. Cameron, 100 N.J. 586, 593 (1985))). To be found facially vague, the law must be "vague in all applications." Ibid.

Moreover, "[a] criminal statute challenged as vague is subject to sharper scrutiny and given more exacting and critical assessment under the vagueness doctrine than civil enactments." State v. Higginbotham, 475 N.J. Super. 205,

221 (App. Div. 2023), aff'd as modified, 257 N.J. 260 (2024). "The most stringent judicial review has been reserved for those cases involving criminal statutes or penalties, or situations in which a law threatens to inhibit the exercise of constitutionally protected rights." In re Hotel & Rest. Emps. & Bartenders Int'l Union Loc. 54, 203 N.J. Super. 297, 329 (App. Div. 1985). By contrast, "civil statutes in general, and economic regulations in particular, are subject to less stringent scrutiny under the vagueness doctrine." In re Loans of N.J. Prop. Liab. Ins. Guar. Ass'n, 124 N.J. 69, 78 (1991). "A commercial regulatory statute can be held unconstitutionally vague only if it is 'substantially incomprehensible.'" Ibid. (quoting Exxon Corp. v. Busbee, 644 F.2d 1030, 1033 (5th Cir. 1981)).

Here, DACCA and its companion provisions in the Criminal Code authorize both criminal and civil sanctions to be imposed on persons who violate the debt adjustment laws. Consequently, the statutory scheme as a whole must be sufficiently clear to withstand either method of judicial scrutiny.

Plaintiffs further argue the statute is unconstitutionally vague as applied to them. A law "challenged as vague as applied must lack sufficient clarity respecting the conduct against which it is sought to be enforced." Lenihan, 219 N.J. at 267 (quoting Visiting Homemaker Serv. of Hudson Cnty. v. Bd. of

Chosen Freeholders of Hudson Cnty., 380 N.J. Super. 596, 612 (App. Div. 2005)). If the statute "is not vague as applied to a particular party, it may be enforced even though it might be too vague as applied to others." Ibid. (quoting Cameron, 100 N.J. at 593). Accord State v. Dalal, 467 N.J. Super. 261, 281 (App. Div. 2021).

B.

We hold that the limited attorney exemption lacks such necessary clarity, whether it is analyzed on its face or as applied. The provision's ambiguity is patent, even if we disregard the deposition testimony of DOBI's Chief of Consumer Finance Operations, in which he struggled to explain with precision how to measure whether an attorney is "principally engaged" in debt adjustment activities.

As we have noted, DACCA contains no definition of the pivotal concept of an attorney who is "principally engaged" in debt adjustment activities. DOBI has no rule, regulation, criteria, or methodology to determine when an attorney is principally engaged as a debt adjuster. It is unknown whether DACCA's limited attorney exemption is to be measured or assessed on a daily, weekly, monthly, or annual basis. Also unknown is whether the "principal" requirement is based on the number of a lawyer's clients or cases or on the revenue received.

A-0052-23

Nor is it clear whether an attorney would be evaluated separately from the attorney's law firm.

Indeed, at any given moment when a lawyer is performing a task for a client in need of debt relief, it is impossible to ascertain whether the task is dominantly "the practice of law" or dominantly "the activity of a debt adjuster." The terminology is both qualitatively and quantitatively vague. The dictionary definitions cited by the parties fall short of resolving the demarcation with objective criteria.

We appreciate that defendants have presented citations to other statutes and regulations that use the phrase "principally engaged." Yet, defendants concede that none of those provisions set forth specific definitions of the phrase. And no reported case addresses an argument, such as the one plaintiffs make here, that the phrase can be unconstitutionally vague.

As a result of the limited attorney exemption's ambiguity, attorneys must necessarily conjecture about its meaning and could reasonably differ as to its application. Attorneys are thereby denied due process because of the statute's failure to provide them with adequate and fair notice or warning, especially considering that violations of DACCA are punishable by civil penalties and as fourth-degree crimes. See State v. Morrison, 227 N.J. 295, 314 (2016) (stating

42

due process principles "require[] that citizens be given adequate notice of what the law proscribes").

Furthermore, a statute is unconstitutional if it gives a public entity, such as DOBI, such broad powers that a violation of DACCA would depend on the official's "own subjective views as to the propriety of the conduct." State v. Lashinsky, 81 N.J. 1, 16 (1979) (citation omitted). No attorney should be held responsible for conduct that the attorney could not reasonably understand to be prohibited. Ibid. The laws before us do not adhere to these principles.

Thus, we conclude DACCA's limited attorney exemption is impermissibly vague on its face and, therefore, is unconstitutional. It also is vague as potentially applied to plaintiffs because there is no clear methodology for measuring whether their practices do or don't cross the line of "principal engagement." The provision is consequently void for vagueness.

IV.

We need not address and resolve plaintiffs' remaining arguments under the First Amendment and the federal and state civil rights laws. For one thing, the record has not been developed as to the extent, if any, that the DACCA provision has curtailed the speech of plaintiffs. In addition, we observe the well-established prudential custom to refrain from reaching constitutional questions

43

unnecessarily when adequate grounds already exist to resolve a case.  Randolph

Town Ctr. v. Morris Cnty., 186 N.J. 78, 80 (2006).  Because we have found the

statutory scheme violates separation-of-powers principles and vagueness norms,

we need not go further than to declare the "principally engaged" limitation

within the exemption invalid.  The rest of the statute remains intact.[18]

In light of our disposition, we remand the civil rights claims relating to

the vagueness/due process issues, including potential counsel fee claims and the

First Amendment claims, to be reconsidered by the trial court.  We intimate no

views on those remanded issues.

We therefore reverse the trial court and grant plaintiffs' summary

judgment, declaring the limited attorney exemption in N.J.S.A. 17:16G-

1(c)(2)(a) and its cross-reference to N.J.S.A. 2C:21-19(f) as violative of the

Judiciary's authority over the practice of law under Article VI, Section 2,

Paragraph 3 of the State Constitution and also as void for vagueness.  The

exemption must be construed, as it was expressed under the pre-1986 versions

---

[18]  See N.J.S.A. 1:1-10 (authorizing a court to declare a portion of a statute unconstitutional, while leaving the remainder of the law intact); N.J. State Chamber of Com. v. N.J. Election L. Enf't Comm'n, 82 N.J. 57, 75 (1980) (engaging in such "judicial surgery").

of the statutory scheme, as a total exemption of all attorneys when they are lawfully practicing in this state.[19]  Our determination is effective immediately.

Reversed and remanded for further proceedings in accordance with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

---

[19]  We need not speculate here whether curative legislation enacted in its stead would pass constitutional muster.  DeVesa v. Dorsey, 134 N.J. 420, 428 (1993) (disfavoring advisory opinions).

A-0052-23