988 A.2d 136 (2010)
411 N.J. Super. 574
Cathy C. CARDILLO, Esq., Plaintiff-Respondent,
v.
BLOOMFIELD 206 CORP., James Stathis and Steven Silverman, Defendants-Appellants.
No. A-4020-08T3.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 2009.
Decided February 18, 2010.
*137 Charles X. Gormally, argued the cause for appellants (Brach Eichler, L.L.C., attorneys; Mr. Gormally, of counsel and on the brief; Sean A. Smith, on the brief).
Cathy Cardillo, respondent, argued the cause pro se.
Before Judges RODRÍGUEZ, YANNOTTI and CHAMBERS.
The opinion of the court was delivered by
CHAMBERS, J.A.D.
This appeal arises out of an agreement between plaintiff Cathy C. Cardillo, Esq. and defendants Bloomfield 206 Corporation (Bloomfield), James Stathis and Steven Silverman (the Cardillo Agreement). In the Cardillo Agreement, Cardillo, an attorney, agreed not to represent parties in litigation adverse to the defendants. At the same time that she was negotiating the Cardillo Agreement on her own behalf with defendants, she was also negotiating an agreement to settle litigation she had brought on behalf of clients against defendant Bloomfield. Cardillo and counsel for defendants exchanged emails relating their mutual understanding that the two agreements were being negotiated separately.
Cardillo thereafter brought this action to seek a court determination that the Cardillo Agreement was void, contending that it violated RPC 5.6(b) which prohibits an attorney from agreeing to restrict the attorney's practice as "part of the settlement of a controversy between private parties." The trial court granted her application, and defendants appealed. We affirm. Attorneys may not circumvent the import of RPC 5.6(b) by stating that the settlement of litigation is separate from the agreement to restrict the practice of law where the agreements were negotiated contemporaneously and are interconnected.

I
The path that led to this suit began in 2000, when Cardillo provided legal advice to Liberty Realty, L.L.C. (Liberty) and was paid for those services. The three principals of Liberty were Joseph Covello and defendants Stathis and Silverman.
Thereafter, Cardillo represented Jay Rubinstein and Gary Rubinstein in Rubinstein v. Bloomfield 206 Corp., Docket No. HUD-L-921-07 and Bloomfield 206 Corp. v. City of Hoboken, Docket No. HUD-L-3112-07 (the Rubinstein litigation). Bloomfield was owned by Stathis and Silverman. Since Stathis and Silverman were also owners of Liberty when Cardillo had previously represented that entity, *138 Bloomfield moved to disqualify Cardillo from representing the Rubinsteins.
While this motion was pending, Cardillo and counsel for Bloomfield negotiated a settlement of the Rubinstein litigation. Contemporaneously with those negotiations, Cardillo also negotiated with counsel for Bloomfield and its principals, Stathis and Silverman, for the Cardillo agreement whereby she would refrain from representing clients adverse to defendants. On August 28, 2007, the settlement agreement for the Rubinstein litigation was executed. The next day, August 29, 2007, after some further negotiation regarding the language in the confidentiality provision, the parties executed the Cardillo Agreement which included the following provision limiting Cardillo's practice:
Cardillo expressly agrees not to take any position adverse to, represent or participate in the representation of any party in any future action against Stathis, Silverman, Bloomfield 206 or any corporation, limited liability company or other legal entity in which Stathis or Silverman has an existing ownership interest, at the time of her initial representation or participation in the representation of any party. Cardillo represents that as of August 29, 2007, the date of her execution of this agreement, she does not represent any individual or other entity in any pending or contemplated action against Stathis, Silverman, Bloomfield 206 or any corporation, limited liability company or other legal entity in which Stathis or Silverman have an ownership interest.
The Cardillo Agreement further provided that defendants Bloomfield, Stathis and Silverman waived any conflicts of interest that may have arisen due to Cardillo's representation of any parties in the Rubinstein litigation or any other action, and they agreed to withdraw any action pending before the court asserting such a conflict of interest.
On January 28, 2009, Cardillo commenced this lawsuit by filing a verified complaint and order to show cause, seeking injunctive relief. She sought a ruling that the Cardillo Agreement was void and unenforceable as a violation of RPC 5.6(b). She wanted this relief in order to represent a client against another corporation owned by Silverman and Stathis. Two days later, on January 30, 2009, the trial court heard Cardillo's application for temporary restraints. Based on the papers and argument presented, the trial court determined that the Cardillo Agreement violated RPC 5.6(b). The trial court entered an order dated February 3, 2009, holding the Cardillo Agreement void and unenforceable.
Objecting to the granting of final relief on the date set to determine only temporary relief, defendants, thereafter, moved for reconsideration. At oral argument, defense counsel assured the trial court that, with the papers on the motion for reconsideration, the record was complete. By order dated April 3, 2009, the trial court denied the motion for reconsideration.
Defendants appeal both of these orders. Defendants contend that the trial court improperly converted the order to show cause application for temporary relief into a summary proceeding and that the Cardillo Agreement does not violate RPC 5.6(b). They further maintain that Cardillo is equitably estopped from asserting that the Cardillo Agreement should be considered as part of the Rubinstein litigation.

II
At the outset, we note that under RPC 5.6(b) "[a] lawyer shall not participate in offering or making: ... (b) an agreement *139 in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties." RPC 5.6(b) is modeled after the American Bar Association's (ABA) Model Rule of Professional Conduct 5.6(b). See Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 19, 607 A.2d 142 (1992) (explaining that New Jersey adopted the ABA Model Rules of Professional Conduct, including RPC 5.6, in 1984).[1] The rationale for the Model Rule has been explained as follows:
First, permitting such agreements restricts the access of the public to lawyers who, by virtue of their background and experience, might be the very best available talent to represent these individuals. Second, the use of such agreements may provide clients with rewards that bear less relationship to the merits of their claims than they do to the desire of the defendant to "buy off" plaintiff's counsel. Third, the offering of such restrictive agreements places the plaintiff's lawyer in a situation where there is conflict between the interests of present clients and those of potential future clients. While the [Model Rules] generally require that the client's interests be put first, forcing a lawyer to give up future representations may be asking too much, particularly in light of the strong countervailing policy favoring the public's unfettered choice of counsel.
[ABA Comm. Ethics and Prof'l Responsibility, Formal Op. 93-371 (1993) (discussing RPC 5.6 in the context of settlement of mass tort litigation)].
Thus, if Cardillo agreed to restrict her practice as part of the settlement of the Rubinstein litigation, RPC 5.6(b) was violated.
Defendants maintain that RPC 5.6(b) is inapplicable because the Cardillo Agreement was not "part of the settlement of a controversy between private parties." Defendants argue that the settlement with the Rubinsteins was separate from the Cardillo Agreement, citing email exchanges by the parties at the time of the negotiations stating that the two matters were separate and the fact that the Rubinstein settlement agreement was executed first.
We reject this argument because it ignores the fact that the two agreements were being negotiated simultaneously and were intertwined. Defendants, including Bloomfield, were negotiating the Cardillo Agreement at the same time that Cardillo was representing and negotiating a settlement agreement with Bloomfield on behalf of her clients, the Rubinsteins. Further, during the time period in which the Cardillo Agreement was negotiated, Bloomfield's motion to disqualify Cardillo was pending in the Rubinstein litigation.
Indeed, the Cardillo Agreement is expressly tied to the Rubinstein litigation, because in the Cardillo Agreement, defendants agreed to waive any conflict Cardillo had in the Rubinstein litigation and to withdraw any conflict of interest application pending in court against her. As the trial court noted on the motion for reconsideration, Cardillo agreed not to represent any clients against defendants in the future in exchange for defendants' agreement to withdraw the motion to disqualify Cardillo in the Rubinstein litigation. The parties cannot circumvent the import of RPC 5.6(b), and the reality of their transaction by expressly claiming during the negotiations that they are negotiating the two agreements separately and then by executing two separate agreements. Nor *140 may they defeat application of the RPC by the device of arranging to execute the agreements on different days or with minor negotiations in the interim.
The Cardillo Agreement violates RPC 5.6(b) because it restricts Cardillo's right to practice law and it was part of the settlement of the Rubinstein litigation. A contract that violates the Rules of Professional Conduct is void and unenforceable as a violation of public policy. Jacob v. Norris, McLaughlin & Marcus, supra, 128 N.J. at 17, 607 A.2d 142. Because the Cardillo Agreement violates RPC 5.6(b), it is not enforceable. Of course, Cardillo is still bound by RPC 1.9 which sets forth the obligations of attorneys to their former clients and limits their ability to participate in litigation involving former clients.
Defendants argue that principles of equitable estoppel preclude Cardillo from challenging the validity of the Cardillo Agreement on the basis that it is tied to the Rubinstein litigation because she had consistently asserted during negotiations that the Rubinstein settlement and the Cardillo Agreement were separate and independent from each other.
Equitable estoppel is an equitable doctrine providing that "one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct." Twp. of Middletown v. Simon, 193 N.J. 228, 250, 937 A.2d 949 (2008) (quoting Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503-02, 117 A.2d 585 (1955)). This equitable doctrine is not appropriately applied here. First, defendants, in negotiating an agreement that violated RPC 5.6(b), cannot be said to have acted with good reason or in good faith. Second, enforcement of RPC 5.6(b) will cause no injustice here. RPC 5.6(b) is designed in part to benefit the public; that purpose would be thwarted if equitable estoppel principles allowed the Cardillo Agreement to stand.
Defendants also argue that the trial court's decision should be overturned because the court procedurally erred by granting final relief on Cardillo's initial application for temporary restraints pursuant to Rule 4:52-1(a). The rules contemplate that upon an application for temporary restraints only temporary relief will be granted, if appropriate, and that a final return date will be set to consider a final disposition. R. 4:52-1(a); see also Waste Mgmt. of N.J., Inc. v. Union County Utils. Auth., 399 N.J.Super. 508, 516-18, 945 A.2d 73 (App.Div.2008) (stating that a permanent injunction may not be issued on the return of an application for an interlocutory injunction unless the parties "understand and consent to a summary disposition of their disputes").
While the trial court did not follow this procedure, defendants did, thereafter, make a motion for reconsideration and presented to the court all of their additional materials and arguments addressing the issues that would have been raised had a final return date been set. Cf. Blunt v. Klapproth, 309 N.J.Super. 493, 509, 707 A.2d 1021 (App.Div.) (any error in granting summary judgment before discovery was complete became moot when the additional discovery was able to be presented on the motion for reconsideration), certif. denied, 156 N.J. 387, 718 A.2d 1216 (1998). Taking into account the additional arguments and materials provided in the motion for reconsideration, we conclude that the trial court correctly upheld its earlier ruling that the Cardillo Agreement violated RPC 5.6(b) and is void and unenforceable.
Affirmed.
NOTES
[1] In 2002, RPC 5.6(b) of the ABA Model Rules of Professional Conduct was amended to read "[a] lawyer shall not participate in offering or making: ... (b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy."