NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2323-23

DANA CLARK STEVENSON,

     Plaintiff,

and

MARK HENDRICKS,
KENNETH FUQUA and
DARIUS SNEAD,

     Plaintiffs-Appellants,

and

THE CLASS OF SIMILARLY
SITUATED,

     Plaintiff-Respondent,

v.

THE COUNTY OF SALEM,
JOHN S. CUZZUPE, in his
individual and official capacities,

     Defendants-Respondents.

<div style="border:1px solid black; padding:8px; text-align:center;">
<strong>APPROVED FOR PUBLICATION</strong><br>
<strong>June 24, 2026</strong><br>
<strong>APPELLATE DIVISION</strong>
</div>

Argued January 22, 2026 – Decided June 24, 2026

Before Judges Currier, Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Salem County, Docket No. L-0092-17.

William Riback (The Riback Law Firm, LLC) argued the cause for appellants.

Stephen W. Barry argued the cause for respondent The Class of Similarly Situated (Carl D. Poplar and Barry Corrado & Grassi, PC, attorneys; Stephen W. Barry and Carl D. Poplar, on the brief).

Brian H. Leinhauser argued the cause for respondents County of Salem and John S. Cuzzupe (Brian H. Leinhauser (MacMain Leinhauser, PC) and Matthew S. Polaha (MacMain Leinhauser, PC), attorneys; Brian H. Leinhauser and Matthew S. Polaha, on the brief).

The opinion of the court was delivered by

CURRIER, P.J.A.D.

This appeal arises from a final order approving a class action settlement, decertifying two of four certified classes, dismissing the claims of the decertified classes, and authorizing counsel fees. Plaintiffs,[1] formerly class representatives who agreed to the mediated settlement, later objected, asserting the terms were not fair or reasonable. After a review of the contentions in light of the record and applicable principles of law, we are satisfied the court

---

[1] Plaintiff Dana Clark Stevenson passed away during the litigation and the Estate did not pursue the claims. We refer to the three appellants/objectors collectively as plaintiffs or objectors.

A-2323-23

did not abuse its discretion in approving this class action settlement in accordance with Rule 4:32-2(e).  We affirm.

## I.

Plaintiffs, former inmates at the Salem County Correctional Facility (the facility), alleged that officials improperly placed them in an "at-risk" unit—designated for individuals considered dangerous to themselves or others—which subjected them to unlawful strip searches.  Plaintiffs sued Salem County (the County) and the facility's warden, John Cuzzupe, for civil rights and state law violations.  Carl Poplar and William Riback represented plaintiffs.

Extensive factual and expert discovery took place, including depositions of plaintiffs, the warden, and other officers involved in the daily operations of the facility.  Documents and video tape footage were produced and a site visit to the facility took place.

Preliminary Class Certification

In 2020, the court certified four classes:

> Class 1A: Non-indictable detainees classified as at-risk who were strip-searched based on their identification as at-risk inmates and absent reasonable suspicion in violation of N.J.S.A. 2A:161A-1(c). Class period commences on April 6, 2015.
>
> Class 2:  Detainees admitted to the at-risk unit and strip-searched 2-3 times per day despite being in a 24/7 lock-down unit.  Class period commences on April 6, 2015.

3

Class 3: Detainees who were strip-searched in the view of others in a group strip search. Class period commences April 6, 2015.

Class 4: Detainees who were strip-searched in their cells in the at-risk unit while being videotaped and observed by a person not authorized to view the search. Class period commences April 6, 2015.

[(Citation reformatted).]

The court named Stevenson and Snead representatives for the first class, Fuqua and Snead for class two, Hendricks and Fuqua for class three,[2] and Stevenson, Fuqua, and Snead for class four. The court appointed Poplar and Riback as class counsel and later granted plaintiffs' motion to add Stephen Barry as well. The court did not order notice of certification to class members.

Mediation and Settlement

On October 7, 2020, Barry informed the court that the parties agreed to attend mediation on November 24, 2020. One week later, defendants moved to decertify classes two and four.

On November 25, 2020, Barry notified the court that the parties had reached a settlement and would soon seek court approval. Barry advised he had "reached out to the four class representatives to discuss the settlement

---

[2] Fuqua testified in his deposition that he was only the class representative for classes two and four.

terms and they [were] in agreement with them." Barry also stated "[t]he pending motions [were] all obviated by our settlement."

Thereafter, the attorneys generated a term sheet outlining the financial aspects of the settlement: each of the four class representatives would receive a $7,500 incentive award; class one members would receive $75; class three members would receive $300; class counsel would apply for a fee in the amount of $375,000; and claims brought by classes two and four would be dismissed with prejudice. All attorneys, including Riback, signed the term sheet in December 2020 and January 2021.

In June and July 2021, all counsel executed a joint stipulation decertifying and dismissing with prejudice the claims under classes two and four. The stipulation stated that after "a thorough examination and investigation of the facts and law relating to the matters" "includ[ing] documentary discovery, depositions, and expert discovery" "[p]laintiffs . . . concluded that decertification of the class[es] is appropriate."

On September 1, 2021, Barry sent a letter to the court attaching the executed settlement agreement, which provided for monetary compensation to classes one and three and explained that counsel had agreed to decertify classes two and four due to insufficient factual and legal support for those claims. Riback was named as class counsel along with Barry and Poplar.

On October 4, 2021, Barry, on behalf of the class plaintiffs, filed a motion for preliminary approval of the settlement, attaching the executed term sheet and stipulation of decertification. Riback filed certifications from representatives Hendricks and Snead opposing the settlement due to its inadequate compensation and the decertification of classes two and four.

Objections to the Settlement Agreement

Several days later, the parties appeared before the court for a conference where Riback appeared as class counsel and on behalf of objectors Hendricks and Snead. Later, Fuqua joined the objectors. The court directed the parties to submit briefs on the disputed issues concerning the settlement.

In subsequent letters to the court, Poplar and Barry argued Riback remained bound by the settlement agreement he signed and they questioned whether Riback had standing to file the objections given his execution of the settlement agreement.

During oral argument on the motion for preliminary approval of the settlement, Poplar and Barry maintained that the settlement was fair and reasonable and explained that they agreed to decertify classes two and four after evaluating the legal and evidentiary weaknesses of those claims. Riback opposed the settlement, citing "a failure of adequacy of counsel," insufficient

compensation to the class members, and that it was unfair to decertify classes two and four when they had meritorious claims that could prevail at trial.

Order Preliminarily Approving Settlement

On March 25, 2022, the court entered an order preliminarily approving the settlement. In its written decision, the court carefully analyzed the nine Girsh[3] factors that a court considers when deciding to approve a class action settlement and concluded they weighed in favor of preliminary approval. Those factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.
>
> [Strougo, 457 N.J. Super. at 159 (quoting Girsh, 521 F.2d at 157).]

---

[3] Girsh v. Jepson, 521 F.2d 153, 156-57 (3d Cir. 1975). See Strougo v. Ocean Shore Holding Co., 457 N.J. Super. 138, 150 (Ch. Div. 2017) (stating New Jersey courts have adopted the application of the Girsh factors to evaluate the fairness of a proposed settlement).

The court directed the parties to send formal notice of the settlement terms to all members of classes one and three and noted that the preliminary approval of the settlement remained subject to a final approval hearing.

<u>Subsequent Motions</u>

Thereafter, the objectors moved for reconsideration of preliminary approval and to disqualify Poplar and Barry as class counsel. The court denied the motion for reconsideration in May 2022, finding that the objectors were simply rearguing the issues the court had fully addressed in its prior written decision.

In June 2022, the court denied Riback's motion to disqualify Poplar and Barry as class counsel. However, the court acknowledged the professional relationship among class counsel had "soured" and scheduled a conference to address "how counsel could proceed in representing the classes' interests, whether together or separately."

We denied Riback's subsequent motions for leave to appeal the preliminary settlement approval and the denial of his motion to disqualify Poplar and Barry.

Thereafter, defendants requested leave from the court to depose the objectors. In response, Riback moved for a protective order to bar the objector's depositions.

Barry and Poplar moved to disqualify Riback as class counsel and asked the court to declare that Riback be bound by the terms of the settlement agreement. After oral argument on the motions, and prior to any rulings by the court, Riback voluntarily withdrew as class counsel on August 11, 2022.

In an extensive oral decision issued September 9, 2022, the court granted Barry's and Poplar's motion to enforce the settlement and denied Riback's motion to vacate it. In a thorough analysis of the presented arguments, the court noted that Riback participated in the drafting of the settlement agreement and related documents for months, agreeing to the settlement terms and executing the agreement without voicing any concerns regarding its contents. Then, several months after he signed the agreement and it was submitted to the court, Riback changed his mind. The court found Riback had failed to demonstrate any basis to vacate the settlement agreement.

The court also considered Barry's and Poplar's motion to disqualify Riback as class counsel. The court noted that the motion was partially resolved by Riback's voluntary withdrawal as class counsel but it still needed to address whether Riback should be disqualified from representing the objectors. The court determined that Riback could continue to represent the objectors.

The court granted the motion to depose the four objectors, articulating it was necessary to better understand their reasons for objecting to the settlement. We denied Riback's subsequent motion for leave to appeal this order. Thereafter, the parties deposed Fuqua, Snead, and Hendricks.

In July 2023, the court, with consent of the parties, modified its preliminary approval order and required notice of the settlement terms be sent to classes one and three within thirty days. It also scheduled a final approval hearing for January 5, 2024. The objectors filed an objection to the settlement agreement, relying on their deposition testimony.

Fairness Hearing and Final Approval of Settlement

During the fairness hearing on January 5, 2024, Fuqua, Snead, and Hendricks testified consistently with their depositions and prior certifications—that they objected to the decertification of classes two and four and criticized the settlement for failing to require the facility to cease its strip search practices. The objectors all testified they were unaware Riback had originally signed the agreement and stipulation, and they did not know about the motions to dismiss the two classes and the reasons for the applications.

On February 8, 2024, the court entered an order and written decision granting final approval of the settlement. The court carefully analyzed each of the Girsh factors and found the agreement was fair, reasonable and adequate

under Rule 4:32-2(e)(1)(C). It also determined the members of classes one and three received a material benefit in the form of monetary compensation. As to members of classes two and four, the court found that

> all class counsel agreed that the evidence produced in discovery did not set forth facts that would entitle those class members to a recovery . . . . Their recovery was on the brink of a dismissal via . . . [d]efendant[s]'[] pending motions, therefore, the court does not find this result to be unfair.

The court also found the settlement was not just for the attorneys' benefit. The court reviewed the hours spent on the litigation and the $375,000 proposed counsel fee award and found the hourly rate was "likely . . . well beneath the hourly rate each of these attorneys would otherwise charge." Therefore, the settlement was not a "windfall" for the lawyers or done solely for their benefit.

In considering Riback's arguments, the court did not find them "persuasive to show the settlement agreement was unfair, unreasonable or inadequate for the class." The court also rejected Riback's notice argument, stating "defense counsel confirmed that every member of [c]lass [two] and [c]lass [four] was placed on notice of the final hearing by the [c]laims [a]dministrator."

On February 22, 2024, the court executed the parties' joint stipulation decertifying classes two and four and dismissing plaintiffs' individual claims.[4]

## II.

On appeal, plaintiffs assert the court erred in approving the class settlement and finding class counsel was adequate. Specifically, they contend the agreement is void and unenforceable as a violation of public policy because it contains a restrictive covenant in violation of RPC 5.6(b); the trial court abused its discretion by improperly decertifying and dismissing classes two and four without providing notice to the absent class members; and they challenge the $375,000 attorney's fee, stating it "suggests self-dealing" because it is significantly higher than the class payout of $127,125.

We review a trial court's decision on a class action, including approval of a settlement, for abuse of discretion. Dugan v. TGI Fridays, Inc., 231 N.J. 24, 50 (2017). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

---

[4] In their appellate opposition brief filed in December 2024, defendants represented 783 members of classes one and three had filed claims forms.

A-2323-23

"A 'class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."'" Little v. Kia Motors Am., Inc., 242 N.J. 557, 581 (2020) (quoting Dugan, 231 N.J. at 46). A class action "helps to equalize adversaries, a purpose that is even more compelling when the proposed class consists of people with small claims." Iliadis, 191 N.J. at 104. For that reason, a class action "furthers numerous practical purposes, including judicial economy, cost-effectiveness, convenience, consistent treatment of class members, protection of defendants from inconsistent obligations, and allocation of litigation costs among numerous, similarly-situated litigants." Ibid.

Class action suits in New Jersey are governed by Rule 4:32. "There is a strong public policy favoring the settlement of litigation." Chattin v. Cape May Greene, Inc., 216 N.J. Super. 618, 626 (App. Div. 1987). However, "[s]ettlements of class actions are treated differently from other settlements." Ibid. This is because a settlement of a class action binds individuals "not involved in settlement negotiations" before the court and therefore implicates "the usual right of litigants to determine their own best interest." Id. at 627. Accordingly, approval of a class action settlement requires court review and approval under Rule 4:32-2(e).

In the context of a class action settlement, first, "the court must make a preliminary determination that the proposed settlement has sufficient apparent merit to justify scheduling a hearing to review its terms." Morris Cnty. Fair Hous. Council v. Boonton Twp., 197 N.J. Super. 359, 369 (Law Div. 1984), cited with approval in Builders League of S. Jersey, Inc. v. Gloucester Cnty. Utils. Auth., 386 N.J. Super. 462, 471 (App. Div. 2006), and Sutter v. Horizon Blue Cross Blue Shield of N.J., 406 N.J. Super. 86, 101-02 (App. Div. 2009). After the court grants preliminary approval, "a formal notice approved by the court must be given to all members of the class and others who may have an interest in the settlement." Morris Cnty. Fair Hous. Council, 197 N.J. Super at 369; see also R. 4:32-2(e)(1)(B) (requiring the court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement."). Once the interested parties have been given adequate time to prepare, the court must hold a fairness hearing to determine whether "the settlement is 'fair and reasonable' to the members of the class." Morris Cnty. Fair Hous. Council, 197 N.J. Super. at 369; accord R. 4:32-2(e)(1)(C).

"The hearing on the proposed settlement is not a plenary trial and the court's approval of the settlement is not an adjudication of the merits of the case." Sutter, 406 N.J. Super. at 102 (quoting Builders League of S. Jersey, Inc., 386 N.J. Super. at 471). "Rather, it is the court's responsibility to

determine, based upon the relative strengths and weaknesses of the parties' positions, whether the settlement is 'fair and reasonable,' that is, whether it adequately protects the interests of the persons on whose behalf the action was brought." Ibid. (quoting Builders League of S. Jersey, Inc., 386 N.J. Super. at 471).

Although objectors are entitled to present evidence and argument to the trial court, id. at 101, a settlement "may be approved even in the face of a majority vote by members of the class to disapprove the settlement." Chattin, 216 N.J. Super. at 627.

<center>A.</center>

We turn to plaintiffs' contentions regarding the fairness of the settlement agreement. In Strougo, 457 N.J. Super. at 159, the Chancery Division judge adopted the factors articulated in Girsh, noting they were "reinforced by a substantial amount of case law in the Third Circuit and elsewhere." We similarly conclude the factors are the foremost mechanism under which to analyze the motion for approval of a class action settlement.

As stated, the court carefully reviewed each Girsh factor and found all but one weighed heavily in favor of settlement.[5] Plaintiffs do not expressly

---

[5] The parties did not address factor seven during the final fairness hearing—the ability of defendants to withstand a greater judgment. Therefore, the court

challenge the trial court's <u>Girsh</u> analysis. They merely just generally contest the overall fairness of the settlement. Therefore, we consider plaintiffs' specific assertions to determine whether the court abused its discretion in approving the settlement.

Plaintiffs contend the court erred in allowing the decertification of classes two and four because these classes had meritorious claims that could have prevailed at trial. They also assert the court should have required the parties to send a formal notice to every member of classes two and four, informing them of the decertification and dismissal of their claims.

"The decertification of a class, in whole or in part, is one of the remedies available to a trial court under <u>Rule</u> 4:32-2." <u>Little</u>, 242 N.J. at 590; <u>see also</u> <u>In re Cadillac V8-6-4 Class Action</u>, 93 N.J. 412, 437 (1983) (noting that <u>Rule</u> 4:32-2 "vests in the trial court substantial control over management of a class action" and that "[a] trial court can mold the class . . . and, in an appropriate case, can even decertify a class."). Our courts recognize that "[a] certification order is 'inherently tentative,' particularly before notice is sent to class members" and therefore can be subject to modification. <u>Muise v. GPU, Inc.</u>, 371 N.J. Super. 13, 32 (App. Div. 2004) (quoting <u>Coopers & Lybrand v.</u>

_____

found the factor did not favor an approval or a rejection of the settlement agreement terms.

16

<u>Livesay</u>, 437 U.S. 463, 469 n.11 (1978)). We review a trial court's decertification decision for abuse of discretion. <u>Little</u>, 242 N.J. at 590.

The standard for decertification is the same as the standard for class certification pursuant to <u>Rule</u> 4:32-1(a) and (b). <u>Little</u>, 242 N.J. at 591. In other words, if the court finds the criteria for, and goals of class certification are no longer being met, decertification is appropriate. <u>Muise</u>, 371 N.J. Super. at 34.

Here, after years of extensive discovery, class counsel, including Riback, agreed to a joint stipulation decertifying and dismissing with prejudice classes two and four. The Joint Stipulation stated, in pertinent part:

> WHEREAS, the Parties to this Decertification and Stipulation for Dismissal have conducted a thorough examination and investigation of the facts and law relating to the matters in this Litigation and that such examination included documentary discovery, depositions, and expert discovery in the course of the litigation.
>
> WHEREAS, Plaintiffs have concluded that decertification of the class is appropriate based on the information revealed throughout discovery.
>
> . . . .
>
> WHEREAS, Plaintiffs have concluded that the voluntary dismissal of their individual claims with prejudice is in their best interest and appropriate in order to avoid the time, expense, and inherent uncertainties of pursuing protracted litigation and to resolve finally and completely all pending and

potential claims of the Plaintiffs against Defendants, as well as all employees of the County who may have devised, promulgated or enforced the policy or participated in the conduct that is the subject of this Litigation.

WHEREAS, substantial, adversarial negotiations have taken place between the Parties, including mediation before former Judge Joel B. Rosen of Montgomery, McCracken, Walker & Rhoads, LLP, as a result, this Decertification and Stipulation for Dismissal has been reached, subject to the Court approval process set forth herein.

NOW, THEREFORE, it is hereby stipulated and agreed, by and between the undersigned as follows:

1. DECERTIFICATION:

    a. Plaintiffs and Defendants agree to the decertification of [class two].

    b. Plaintiffs and Defendants agree to the decertification of [class four].

    c. There has been no notification to putative Class Members of [classes two and four] of this [c]ourt's Order granting certification of the classes.

    d. There has been no notification to putative Class Members of [classes two and four] of the claims and allegations asserted by Plaintiffs on behalf of putative Class Members against Defendants for the conduct Plaintiffs alleged in this Litigation as violative of the state constitutional rights and New Jersey statute N.J.S.A. 2A:161A-1, et seq. governing strip searches.

e. No further notification to putative Class Members of [classes two and four] is required regarding the decertification of the classes or the resolution of the individual claims asserted by Plaintiffs against Defendants.

f. Putative Class Members of [classes two and four] retain their ability to bring individual claims against Defendants, as well as all employees of the County who may have devised, promulgated or enforced the policy or participated in the conduct that is the subject of this Litigation subject to the Statute of Limitation, applicable Rules of Court for the State of New Jersey, and Federal Rules of Civil Procedure.

2. DISMISSAL:

a. Plaintiffs have brought individual claims identical to those brought on behalf of putative Class Members of [classes two and four] against Defendants based on the conduct that is the subject of this Litigation.

b. Plaintiffs and Defendants agree that individual claims brought on behalf of Dana Clark Stevenson and identical to those brought on behalf of [classes two and four] against Defendants, as well as all employees of the County who may have devised, promulgated or enforced the policy or participated in the conduct that is the subject of this Litigation, are dismissed with prejudice.

c. Plaintiffs and Defendants agree that individual claims brought on behalf of Mark Hendricks and identical to those brought on behalf of [classes two and four] against Defendants, as well as all employees of the County who may have

19

devised, promulgated or enforced the policy or participated in the conduct that is the subject of this Litigation, are dismissed with prejudice.

d. Plaintiffs and Defendants agree that individual claims brought on behalf of Kenneth Fuqua and identical to those brought on behalf of [classes two and four] against Defendants, as well as all employees of the County who may have devised, promulgated or enforced the policy or participated in the conduct that is the subject of this Litigation, are dismissed with prejudice.

e. Plaintiffs and Defendants agree that individual claims brought on behalf of Darius Sneed and identical to those brought on behalf of [classes two and four] against Defendants, as well as all employees of the County who may have devised, promulgated or enforced the policy or participated in the conduct that is the subject of this Litigation, are dismissed with prejudice.

The Joint Stipulation was executed by all counsel in July 2021—nine months after the parties reached a settlement. We discern no abuse of discretion in the court relying on counsels' representations and the executed stipulation to grant final settlement approval. All counsel initially agreed that the decertification of classes two and four was necessary because discovery revealed little evidentiary support for those claims. In its decision granting final settlement approval, the trial court again stated it did not find decertification was "unfair or unreasonable because all class counsel agreed that the evidence produced in discovery did not set forth facts that would

20

entitle those class members to a recovery." Plaintiffs have not presented any additional evidence to contradict these findings. Moreover, under the stipulation, putative class members retain the right to bring suit against defendants for any perceived illegal practice at the facility. The court did not err in signing the stipulation decertifying classes two and four as agreed to in the settlement agreement.

<div align="center">B.</div>

Plaintiffs also assert the court should have provided notice of decertification to classes two and four. Rule 4:32-2(b)(2) provides that if a class is certified pursuant to Rule 4:32-1(b)(3), "the court shall direct to the members of the class the best notice practicable under the circumstances, consistent with the due process of law." The preliminary order certifying the classes did not include a requirement for notice to any of the putative class members. So classes two and four were unaware of the class action. The rules also require a court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." R. 4:32-2(e)(1)(B).

The record does not support the court's statement in the decision granting final settlement approval that the claims administrator had provided notice of the settlement and decertification to classes two and four.

A-2323-23

Nevertheless, the statement is innocuous because no notice of decertification was needed. None of the putative class members were apprised of the original class certifications until the final settlement approval was granted.

Decertification did not prejudice the members of classes two and four because they were never aware of the class action. See Hervey v. City of Little Rock, 787 F.2d 1223, 1230 (8th Cir. 1986) ("[N]otice of the decertification is required only to the extent necessary to reach those potential class members who received notice of certification and relied on being included in the class."). The absent members of classes two and four could not have relied upon their inclusion in this case because they were never notified of the court's order on certification. Thus, the lack of notice of the decertification of classes two and four did not prejudice the absent class members.

C.

Plaintiffs further contend the court erred in approving the settlement agreement because it violates RPC 5.6(b). Section V subsection D of the settlement agreement states: "Class [c]ounsel agrees that they will not represent any individuals who opt-out from the [s]ettlement in asserting claims against [d]efendants that are the subject of this agreement."

22

RPC 5.6(b) provides that "[a] lawyer shall not participate in offering or making: . . . an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties." New Jersey's rule is modeled after the American Bar Association's (ABA) Model Rule of Professional Conduct 5.6(b). Cardillo v. Bloomfield 206 Corp., 411 N.J. Super. 574, 578-79 (App. Div. 2010).

The specific case that elicited the ABA opinion concerned a mass tort global settlement where the plaintiff's firm would be barred from representing individuals in future cases against the defendant. ABA Comm. on Ethics & Pro. Resp., Formal Op. 93-371, at 1 (1993) [hereinafter ABA Formal Op. 93-371]. The ABA stated:

> The pressure to find creative solutions to mass tort litigation has prompted an inquiry regarding the propriety of a lawyer entering into a settlement agreement with an opposing party pursuant to which the lawyer may be obligated to refuse to represent certain present clients as well as other similarly situated individuals against the same defendant in the future.
>
> [Ibid.]

As we noted in Cardillo, the ABA explained its reasoning for the rule as:

> First, permitting such agreements restricts the access of the public to lawyers who, by virtue of their background and experience, might be the very best available talent to represent these individuals. Second, the use of such agreements may provide

23

clients with rewards that bear less relationship to the merits of their claims than they do to the desire of the defendant to "buy off" plaintiff's counsel. Third, the offering of such restrictive agreements places the plaintiff's lawyer in a situation where there is conflict between the interests of present clients and those of potential future clients. While the [Model Rules] generally require that the client's interests be put first, forcing a lawyer to give up future representations may be asking too much, particularly in light of the strong countervailing policy favoring the public's unfettered choice of counsel.

[Cardillo, 411 N.J. Super. at 579 (alteration in original) (quoting ABA Formal Op. 93-371 at 3).]

If a settlement agreement violates RPC 5.6(b), it "is void and unenforceable as a violation of public policy." Id. at 580.

In Cardillo, the attorney agreed to the restrictive covenant in exchange for the defendants' withdrawing a motion to disqualify the lawyer in a separate case. Id. at 576-77. This court found that a provision in a settlement agreement that precluded an attorney from representing anyone "in any future action" against the defendants violated RPC 5.6(b), because it restricted the attorney's "right to practice law." Id. at 577, 580.

In considering this argument, the trial court here found the restrictive covenant did not render the agreement unfair, unreasonable, or inadequate because an attorney is not required to take on a client who has refused the settlement the attorney negotiated on their behalf. However, given the clear

A-2323-23

prohibition in RPC 5.6(b) and the firm language in the ABA's opinion on the issue, the provision in the settlement agreement here violates RPC 5.6 because it unduly restricts the practice of law. The clause prevents class counsel from continuing to represent current clients if the client chooses to opt-out of the settlement. This is the situation the ABA warned about in Formal Opinion 93-371 where it posited that such a restriction might prevent an attorney from representing a client before they could even consider the merits of a case. ABA Formal Op. 93-371 at 4. As we stated in Cardillo, the point of the prohibition is to benefit the public at large, not whether permitting two parties to enforce such a restrictive covenant will cause an injustice. 411 N.J. Super. at 581.

However, our determination that the clause is unenforceable does not automatically void the entire settlement agreement. We must consider whether the severance of the prohibited clause frustrates the purpose of the agreement. "If striking the illegal portion defeats the primary purpose of the contract, [courts] must deem the entire contract unenforceable." Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 33 (1992). On the other hand, "if the illegal portion does not defeat the central purpose of the contract, [a court] can sever it and enforce the rest of the contract." Ibid.

A-2323-23

In <u>Jacob</u>, the Court found that the plaintiff attorneys' termination agreement violated RPC 5.6 because it barred the attorneys from collecting termination compensation if they continued to represent firm clients. <u>Id.</u> at 30-31. Although the Court held the offending provision of the agreement violated RPC 5.6 and was thus unenforceable, it nevertheless concluded it could excise the provision and enforce the remainder of the agreement. <u>Id.</u> at 31-33. The Court reasoned that although the contract contained an unlawful provision, its general purpose was lawful. <u>Id.</u> at 34. The Court also considered the public policy implications in severing the provision from the agreement and noted that "[t]he law is designed to preserve client choice" and thus, the issue was not "which party is more or less innocent, but which outcome best serves the public interest." <u>Id.</u> at 35.

On the other hand, in <u>Cardillo</u>, the court struck the agreement where an attorney agreed not to represent any party in litigation against the defendants. 411 N.J. Super. at 576. There, the parties negotiated the restrictive covenant simultaneously with a settlement agreement. <u>Id.</u> at 577. This court reasoned that the restrictive covenant was "expressly tied" to the settlement and the parties could not circumvent RPC 5.6(b) by executing separate agreements that were nevertheless dependent on one another. <u>Id.</u> at 580.

Mindful of these principles, we are satisfied the restrictive covenant here can be excised from the settlement agreement and the remainder of the agreement may be enforced. There is no evidence the settlement was conditioned on the inclusion of the restriction in the agreement. Class counsel did not agree to a lower compensation for the class or a higher counsel fee in exchange for the inclusion of the restrictive covenant in the settlement.

Moreover, like in Jacob, the offending provision here is not "central" to the settlement nor can it be said that it permeates the entire agreement to warrant striking the entire settlement. See 128 N.J. at 33.

Perhaps most importantly, the objectors who opted out of the settlement did continue with their choice of counsel. Plaintiffs retained Riback as their attorney during the fairness hearing and throughout the appeals process. Riback also continues to represent other opt-out class members in pending federal court cases.[6] Thus, the provision has not precluded any person from retaining the attorney of their choice. In addition, class counsel have represented they have not and do not intend to enforce the restrictive covenant. Nevertheless, striking the provision also ensures that defendants will not be able to bar Riback from continuing to represent these objectors or any

---

[6] Riback represented during an oral argument in the trial court there were pending federal court cases in which he represents plaintiffs who assert similar allegations as here regarding the same strip search practices.

A-2323-23

plaintiffs in the federal court cases. Therefore, we sever the restrictive covenant from the settlement agreement but find the remainder of the agreement enforceable.

D.

Plaintiffs also challenge the settlement agreement, asserting the negotiated counsel fee "suggests self-dealing."

Rule 4:32-2(h) states that "[i]n an action certified as a class action, an application for the award of attorney's fees and litigation expenses, if fees and costs are authorized by law, rule, or the parties' agreement, shall be made in accordance with R[ule] 4:42-9."

The Third Circuit has noted that "large fee awards standing alone do not suffice to show that the representation was inadequate or unethical." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 801 (3d Cir. 1995). However, there is an inherent tension in determining the appropriate class counsel fee because "a defendant is interested only in disposing of the total claim asserted against it; . . . the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." Id. at 819-20 (omission in original) (quoting Prandini v. Nat'l Tea Co., 557 F.2d 1015, 1020 (3d Cir. 1977)). Courts should therefore conduct a thorough

review of class counsel's fee, even if the fee is part of the parties' settlement agreement.  See ibid.; Sutter, 406 N.J. Super. at 103.

"A court may consider two different methods for determining class action fees:  the lodestar method and the percentage of recovery method." Sutter, 406 N.J. Super. at 103-04.  "The lodestar method is usually used in fee-shifting cases" such as civil rights litigation.  Id. at 104.  When a court uses the lodestar method, it considers the hours expended by class counsel multiplied by the appropriate hourly rate based upon the attorney's experience and region of practice.  Ibid.  As we stated in Sutter, the lodestar method can ensure that counsel receive an adequate fee irrespective of the monetary compensation obtained by the class.  Ibid.

Applying the lodestar method "requires the trial court to evaluate carefully and critically the aggregate hours and specific hourly rates advanced by counsel . . . to support the fee application."  Rendine v. Pantzer, 141 N.J. 292, 335 (1995).

Here, although not stated expressly, the court applied the lodestar method.  The trial court looked at class counsel's invoices and conducted a calculation of each attorney's hourly rate based on the negotiated counsel fee divided by the number of hours each attorney spent on the case.  The calculated hourly rate was $156.88, which the court found was "likely . . . well

29

beneath the hourly rate each of these attorneys would otherwise charge." The court stated it could not "find this settlement creates a windfall for the attorneys or that it was done solely for the attorney's benefit."

"We review the trial court's award of fees . . . in accordance with a deferential standard. Such an award 'will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion.'" Hansen v. Rite Aid Corp., 253 N.J. 191, 211-212 (2023) (quoting Rendine, 141 N.J. at 317). We will reverse a trial court's award of fees for abuse of discretion when the court's decision "was based on irrelevant or inappropriate factors[] or amounts to a clear error in judgment." Garmeaux v. DNV Concepts, Inc., 448 N.J. Super. 148, 155-56 (App. Div. 2016).

We see no reason to disturb the fee award agreed to by the parties in the settlement agreement and approved by the trial court. The court noted the extremely low hourly rate of the experienced counsel and the hours spent on the matter by counsel and their respective firms. We are satisfied the court properly exercised its discretion in awarding class counsel attorney's fees.

E.

Plaintiffs argue the trial court erred in denying their motion to disqualify Poplar and Barry as class counsel because they were inadequate, asserting the same reasons supporting the challenge to the settlement agreement—that

counsel should not have agreed to a restrictive covenant in the settlement, or to decertify classes two and four without notice and dismiss their claims, and counsel accepted improper fees.

"[A] motion for disqualification calls for [the court] to balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel." City of Atl. City v. Trupos, 201 N.J. 447, 462 (2010) (quoting Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 218 (1988)). The moving party bears the burden of demonstrating that disqualification is warranted. Ibid. "[A] determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." Id. at 463.

In Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 589 (3d Cir. 1999), the Third Circuit noted that the rules for attorney disqualification cannot be mechanically applied to class action cases because such cases pose unique concerns. It noted that "[i]n many class actions, one or more class representatives will object to a settlement and become adverse parties to the remaining class representatives (and the rest of the class)." Ibid. The court therefore held that:

> [I]n the class action context, once some class representatives object to a settlement negotiated on their behalf, class counsel may continue to represent the remaining class representatives and the class, as

31

long as the interest of the class in continued representation by experienced counsel is not outweighed by the actual prejudice to the objectors of being opposed by their former counsel.

[Id. at 590.]

We find the analysis in Lazy Oil Co. to be instructive. Once plaintiffs objected to the settlement negotiated on their behalf, class counsel became those parties' former counsel and the attorney-client relationship no longer existed. However, here there is no prejudice at all as former class counsel Riback now represents the objectors.

Plaintiffs do not assert any traditional disqualification arguments. Instead, their adequacy of counsel arguments are challenges to the fairness of the settlement agreement. Because we have determined the court did not err in approving the settlement agreement, we need not address plaintiffs' arguments further. Plaintiffs have not demonstrated that class counsel negotiated an unfair settlement or that the court erred in approving the agreement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division